UNITED STATES of America,
Plaintiff-Appellee,

v.

Abe BENDER, Defendant-Appellee.

No. 11168.

United States Court of Appeals,
Seventh Circuit.

Jan. 12, 1955.

Rehearing Denied Feb. 15, 1955.

Maurice J. Walsh, Chicago, Ill., Ezra F. Ressman, Chicago, Ill., for appellant.

Robert Tieken, U. S. Atty., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., for appellee.

Before DUFFY, Chief Judge, and LINDLEY and SWAIM, Circuit Judges.

SWAIM, Circuit Judge.

The defendant, Abe Bender, was convicted, under 26 U.S.C.A. § 145(b), of wilfully and knowingly attempting to evade payment of income tax by filing a false return. This appeal is from that conviction.

The Government's evidence consisted of cancelled checks payable to the defendant, receipted statements of account, and testimony, all of which indicated that the defendant during the year 1946 had gross receipts from the sale of syrup far in excess of the gross income from that source which he reported in his income tax return. The defendant limited his defense to cross-examination of the Government's witnesses and to attacks on the Government's evidence. At the close of the Government's case defendant's counsel announced that the defendant would introduce no evidence.

The defendant first contends that the court erred in denying his motion for acquittal at the close of the Government's case. The ground for the motion was the contention that the Government had not proved beyond a reasonable doubt that there was tax due, which required establishing not only undisclosed income but also a lack of any compensating deductions or exclusions. The defendant seems to contend that the Government here must prove all the facts necessary to show unpaid tax on net income in excess of all business costs and expenses and personal exemptions. But that is not required.

The taxpayer's costs and other factors which would lessen his tax liability are peculiarly within his own knowledge. Accordingly, the law has placed upon him the burden of going forward with the evidence once the Government has established receipts in excess of those reported in his income tax return. As this court said in United States v. Hornstein, 7 Cir., 176 F.2d 217, 220: "The figures of cost of goods sold, as they were used in preparing his tax returns, were at least admissions by the defendant which the government could utilize in making a prima facie case. The defendant was chargeable with them until he offered credible evidence to show that the figures were in error, and that his costs were greater."

If the defendant had additional costs or expenses that offset the unreported income established by the Government's case, the burden was on him to prove that as part of his defense. In his brief on appeal the defendant insists that this rule of law improperly shifts part of the burden of proof from the Government to him. But as we have pointed out, the Government satisfies its burden of proof when it shows that the taxpayer has received more income than was reported. It is then the taxpayer's burden to show, if he can, that, even though he received more income than he reported, he does not owe any additional tax. This rule is grounded on the realization that it would be virtually impossible for the Government to show the negative fact that a taxpayer had no unreported deductions or exclusions. In such a case the Government, having shown unreported income, is aided by the presumption that the deductions and exclusions listed by a taxpayer in his return are all that exist. This presumption is based upon reasonable experience (taxpayers would not knowingly fail to report all valid deductions), and has the effect of shifting

the burden of going forward with the evidence to the defendant, when the Government has shown unreported income. Clark v. United States, 8 Cir., 211 F.2d 100; United States v. Link, 3 Cir., 202 F.2d 592; United States v. Zimmerman, 7 Cir., 108 F.2d 370.

■ The presumption may be rebutted by any substantial evidence but, since the defendant introduced no evidence, the jury was justified in finding that there was tax for 1946 which the defendant had not paid.

The defendant claims that the admission of Government Exhibit 55 was error. Exhibit 55 is a work sheet, prepared by defendant's own accountant from cancelled checks, receipts, etc., in the course of preparing defendant's income tax return. It lists all the individual expenditures and income declared by Bender in his syrup business for the year of 1946. The total "Sales" and "Purchases" listed on the Exhibit are the same as those in Bender's tax return.

■■ Defendant's first complaint is that this is an "extra-judicial confession," and as such cannot be used, uncorroborated, to establish part of the corpus delicti of the crime charged. This argument finds no support in either the law or the facts involved here. The exhibit was corroborated both by Bender's tax return and by the cancelled checks which were in evidence. Furthermore, as already made clear, the corpus delicti of income tax evasion is prima facie established when the Government shows that the defendant has received more money than he reported. This was done before Exhibit 55 was introduced, and defendant did nothing to upset that prima facie case. Since Exhibit 55 was not necessary to establish the corpus delicti, it need not have been corroborated. Auerbach v. United States, 6 Cir., 136 F.2d 882, 885.

■ Bender's contention that Exhibit 55 was improperly obtained by the Government is also without merit. The record shows that Government agents did not obtain the work sheet with, as Bender claims, the promise of dropping the criminal charges against him. They obtained it from Mr. Pos to whom Bender had granted his power of attorney. Mr. Pos told Government investigators that he thought the auditor's work sheet contained mathematical errors which would explain the discrepancies between Bender's actual income and that listed on his tax return. The investigators said that if this proved to be true, they would, of course, drop the criminal charges. It was after this conversation that Mr. Pos gave the investigators the work sheet which later became Exhibit 55. As it turned out, the work sheet did not explain the deficiency, and Bender was indicted. There was nothing improper in the Government agents' conduct. Careful examination of the record shows that Bender's attorney, Mr. Pos, gave the document to the Government voluntarily in the hope that it would explain the deficiencies on the tax return. As attorney for the defendant, he had the authority to do this. For another criminal tax case in which the admission of similar evidence, obtained by the Government from the defendant's attorney, was held proper, see Banks v. United States, 8 Cir., 204 F.2d 666.

■ The defendant objects to the limitation placed upon him by the trial judge with regard to his closing argument concerning a $6,800.00 refund he made to one of his syrup customers. The following took place while the defendant's attorney was addressing the jury with regard to the $6,800.00 refund.

"Mr. Walsh: * * * He didn't take that back to resell it. That isn't the inference you must take from the evidence. He took it back because it was no good.

"Mr. Kralovec: I object. There is no testimony that it was no good.

"Mr. Walsh: The testimony is that it was unsatisfactory merchandise, and I think it is a fair argument.

"Mr. Kralovec: Counsel has stated what he believes is a fact, from the

testimony, and there was no such testimony to that effect. It was testified, I submit, that that was reported on the books as a sale. There is no indication or characterization of what condition that merchandise was in.

"The Court: I do not recall any evidence of the fact that the goods were not satisfactory, Mr. Walsh.

"I will sustain the objection and ask the jury to disregard that phase of Mr. Walsh's argument."

Actually the evidence showed that the syrup was returned because it was unsatisfactory. Mr. Waller, Vice President and Treasurer of Sunset, Incorporated, the company which returned the syrup in question, testified that "it was a return of merchandise which we had purchased that we found unsatisfactory." Apparently the defendant was trying to make the jury think that the deficiency in income reported on his tax return should be reduced by $6,800.00 because he had to refund that amount and received in return syrup that was of no value. If this was defendant's purpose, the court was correct in striking out his statement. The evidence we have set out above was that Sunset returned the syrup because it was "unsatisfactory," and to us this means not suited for Sunset's purposes. This description does not necessarily mean that the returned syrup was valueless to the defendant as his term, "no good," would indicate.

The entire objection is without merit, however, because, if the defendant could have reduced by $6,800.00 the amount of the deficiency proved against him, there would still have been some $17,000.-00 of unreported income.

The Government introduced witnesses who had done business with the defendant. These witnesses identified statements of accounts received from and checks paid to defendant for goods received, and testified as to the particular transactions in which the Government claimed the defendant received unreported income. On cross-examination the defendant's attorney asked questions about other transactions between the witnesses and the defendant which had not been mentioned in direct examination, and about the witnesses' business operations in general. The Government's objections to these questions were sustained in each instance and the defendant claims that this was reversible error.

■ The extent of cross-examination is a matter within the discretion of the trial judge and this court will review the exercise of that discretion only to determine whether or not it has been abused. Bell v. United States, 4 Cir., 185 F.2d 302, 310, 311; Wright v. United States, 87 U.S.App.D.C. 67, 183 F.2d 821; United States v. Fotopulos, 9 Cir., 180 F.2d 631, 640; Minnehaha County, S. D. v. Kelley, 8 Cir., 150 F.2d 356, 360–361.

■ It is the trial judge's duty to so control the presentation of evidence to the jury that it will be as well organized and understandable as possible. The traditional procedure is for the moving party to present its case and then for the defendant to present his defense. As each witness testifies, it is important that the opposing party have an opportunity to test his truthfulness and competency. But it is also important that the regular procedure of the trial be maintained. As a result, each party is allowed to cross-examine his opponent's witnesses but he must ordinarily confine his cross-examination to the subject matter brought out on direct examination. United States v. Fotopulos, supra; Chevillard v. United States, 9 Cir., 155 F.2d 929, 934–935; Kincade v. Mikles, 8 Cir., 144 F.2d 784, 787. If the cross-examiner wants to use the witness to prove other matters, he must wait until it is time to present his case and then call the witness as his own. In this way each party is given an opportunity to challenge the other's witnesses, but the jury is not unnecessarily confused by being presented with evidence as to the contentions of both parties so intermingled as to make the evidence unintelligible.

■ Under some circumstances extraneous matter may be explored on cross-examination for the purpose of testing the credibility of the witness. United States v. Lawinski, 7 Cir., 195 F.2d 1, 6. The extent to which counsel may go in such an attempt is, again, within the discretion of the trial judge who must balance the party's right to impeach his opponent's witnesses against the need to prevent the confusion which may be created by delving into matters which were not examined in the direct examination.

■ The trial judge's duty to see that the evidence is presented to the jury in as orderly and understandable a manner as possible requires that he have broad discretion in such matters. The defendant gave no definite reasons for his attempted examinations. He made no offers of proof. In each case he merely said that he thought the questions were proper and in each case the questions sought information on matters not raised on direct examination. We find in this record no abuse of discretion on the part of the trial judge in refusing to permit the witnesses to answer these questions.

The defendant further complains that the Government changed the theory of the case and greatly confused him by amending its bill of particulars several times, the last of which times was the day before the trial. He further complains that the Government introduced evidence of income from sources which were not even mentioned in the bill of particulars.

■ As regards the amendments, Rule 7(f) of the Federal Rules of Criminal Procedure, 18 U.S.C.A., provides: " * * * A bill of particulars may be amended at any time subject to such conditions as justice requires." Whether or not an amendment should be allowed is in the discretion of the trial court and we will review its decision only for abuse of discretion. United States v. Chapman, 7 Cir., 168 F.2d 997, 999.

The bill of particulars listed the income which the Government expected to prove that defendant did not report on his tax return. It was amended three times. The first amendment increased the amount allegedly received from one customer and dropped the entire amount allegedly received from another. The second amendment stated that "The term 'gross income' as used in * * * the Amended Bill of Particulars * * * is intended to have the same meaning as the words 'gross receipts' and 'gross payments.'" The day before trial the court ordered, on motion of the Government, "that leave be and is hereby given to the Government to withdraw all of the assertions contained in the Supplemental Amended Bill of Particulars [second amendment] and to re-affirm all of the assertions made in the Bill of Particulars * * *." This last minute defining and redefining of terms had no effect on the matters necessary for Bender's defense. It did not amount to a surprise allegation which defendant was not given time to meet. It was therefore not an abuse of the trial court's discretion to allow these amendments to be made.

■ Of all the objections now made to the introduction of evidence of facts not included in the bill of particulars, a careful review of the record shows that the defendant objected to such evidence only once during the trial. We will not review the admission of evidence to which there was no objection made at the trial. Boyle v. Bond, 88 U.S.App.D.C. 178, 187 F.2d 362; Mutual Benefit Health & Accident Association v. Francis, 8 Cir., 148 F.2d 590. The admission of evidence of facts not shown by the bill of particulars certainly did not constitute such obvious or damaging error that we must notice them in the absence of proper objections.

■ The defendant did object, however, to the admission of evidence concerning money received from the Jerome Company which was not mentioned in the bill of particulars. The Government made its case by proving all the income

received by Bender from the sale of syrup and comparing that with the amount declared on his income tax return. The bill of particulars purported to list only that income which was not reported on defendant's tax return. The income from the Jerome Company was listed on Bender's tax return and, therefore, was properly omitted from the bill of particulars. This objection was therefore properly overruled.

Defendant cannot for the first time on appeal object to the instructions given to the jury by the trial court. Rule 30, Federal Rules of Criminal Procedure, 18 U.S.C.A.; United States v. Angel, 7 Cir., 201 F.2d 531, 534. At the trial the defendant did object in a general way to certain of the instructions, but his objections fell far short of being specific enough to give the trial court an opportunity to correct the alleged errors now complained of on appeal.

The defendant now objects to the court's instructions on three subjects: circumstantial evidence, the proper determination of tax due, and the testimony of a single witness. We will quote from the only statements of the defense attorney that could be construed as giving reasons for his objections, Record 427–428:

"Mr. Walsh: * * * The defendant objects to the statement that the case need not be proved by direct and positive evidence.

"The defendant objects to the use of the word 'positive' and objects on the ground that the word 'positive' may lead the jury to believe that the proof need not be affirmative.

"The defendant objects to the statement by the Court that the law demands a conviction in certain instances. Circumstantial evidence is one where it could be identified, contains a statement argumentative and prejudicial to the defendant.

*     *     *     *     *     *

"As I heard it, I believe the instruction contained a statement that

Krane's testimony was controlling. That may be an error.

"The Court: That wording was not used. I think you are mistaken.

"Mr. Walsh: I say, I may be mistaken.

*     *     *     *     *     *

"Mr. Walsh: It may be that I misunderstood that. I think I probably did."

We find it impossible, from the above, to determine what the defendant's objections were and we doubt that the trial judge was able to understand them. The objections must be called to the trial judge's attention with sufficient specificity to apprise him of the question of law raised by the objector. If the District Court was not given an opportunity to rule on the specific objection, we need not consider it on appeal. Reeve Brothers v. Guest, 5 Cir., 131 F.2d 710.

Since we have found no prejudicial errors, the judgment of the District Court is

Affirmed.