**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Alphonse KANTON, Defendant-Appellant.
No. 12452.**

United States Court of Appeals
Seventh Circuit.
March 16, 1959.

Julius L. Sherwin, Theodore R. Sherwin, Chicago, Ill., for defendant-appellant.

Robert Tieken, U. S. Atty., Robert F. Monaghan, Asst. U. S. Atty., Chicago, Ill., John Peter Lulinski, Asst. U. S. Atty., Chicago, Ill., of counsel, for appellee.

Before SCHNACKENBERG, HASTINGS and PARKINSON, Circuit Judges.

PARKINSON, Circuit Judge.

Defendant-appellant Alphonse Kanton, William Lincoln and Earl Ramos were indicted for a violation of Title 18 U.S. C.A. § 2113. The Government elected to proceed solely on Count I of the indictment which charged that the defendants, on February 11, 1958, put in jeopardy the life of an employee of the federally insured Riverside Savings and Loan Association, Riverside, Illinois by the use of firearms and robbed said institution of $1,716.50.

Kanton was individually tried to a jury, Lincoln having been granted a severance and Ramos having pleaded guilty. Kanton was found guilty as charged and sentenced. This appeal followed.

About noon on February 10, 1958 two men attempted to rob the Riverside Savings and Loan Association. As it was closed on that date, the same men returned the following day and armed with revolvers and wearing rubber gloves and silk-stocking masks robbed the institution as charged.

Mr. John B. Harvey, Secretary of the Association, testified that he was there

on Monday, February 10, 1958, and at approximately 11:45 a.m. two men appeared and rattled the door vigorously. He saw the face of one and, through a window, observed them get into a 1950 or 1951 dark green Mercury and drive away.

Marie Harvey testified that the following day at approximately 11:45 a.m., while she was there alone, two men with masks, guns and rubber gloves entered. One of them pointed a gun at her and ordered her to sit in a chair. The other person, whom she saw from the legs down only, was wearing blue jeans and was carrying a rust-red bag in his hand. After they got the money she was placed in the washroom and told not to call the police for five minutes or they would be back to "get" her. As both men left by the rear entrance she opened the washroom door and saw them get into a dark colored car and drive away. Later in the afternoon she was called to the Riverside Police Station and saw an automobile which in her opinion resembled the one used by the two robbers. She could not identify Kanton as either of the robbers.

Shortly after the robbery the police discovered an abandoned 1951 dark-green Mercury in Riverside. This automobile had unmatched license plates with three other plates inside. It was owned by one James Vecchio and had been stolen on Sunday evening, February 9, 1958.

Kanton was arrested on March 18, 1958 by the Chicago Police in connection with a local matter. While being held he asked to talk to the FBI. He told FBI agents that he had information concerning a robbery in which they might be interested and asked what they could do for him.

A line-up was held that evening at the Central Police Headquarters. Mr. Harvey, Agents Shannahan and Scheiwe of the FBI and Lt. Pape of the Chicago Police were present. Kanton appeared in the line-up of six men and was identified by Mr. Harvey as one of the men whom he saw at the door on Monday,

February 10, 1958. Mr. Harvey was then told that this man's name was Kanton. Kanton then admitted to Mr. Harvey that he had been to the Riverside Savings and Loan Association on February 10 and had returned on the 11th and robbed it.

Thereafter Agents Shannahan and Scheiwe interrogated Kanton. The answers were reduced to a short narrative form which was read to and by Kanton. Kanton made corrections which he initialed, and signed the statement in the presence of Shannahan and Scheiwe. Kanton also explained the method of departure after the robbery using a rough drawing prepared by Agent Scheiwe marking thereon the route taken.

The witness Raymond Wisniewski testified that he shared a flat with Kanton at 6526 South Laflin, Chicago, Illinois, and on Sunday, February 9, 1958, he asked Kanton if he would like to go to his brother's house that evening and Kanton said no, that he had to go out that night and pick up a car. The following morning Kanton saw Wisniewski and said that he would see him later in the afternoon. That afternoon Wisniewski asked Kanton how he had made out. Kanton replied that the place was closed and that he was going back "tomorrow." The following day, the 11th, he saw Kanton again in the morning; who stated that he was going to get rich. That afternoon he met him at 6526 South Laflin and upon asking how he made out, Kanton said to him: "Not too good. Only made about six or seven hundred dollars."

On April 30, 1958 Earl Ramos was interrogated by Agents Shannahan and Scheiwe concerning his possible participation in the robbery. The facts elicited at that time, and later testified to by Ramos as a Government witness, were that he had known Kanton since childhood. They participated in the armed robberies of certain savings and loan associations in 1951, for which both had been sentenced to terms in federal institutions. On February 9, 1958 Kanton

came to his home and told Ramos that he had a "score" (a place to be robbed) and did he "want to go with him." Ramos agreed and that evening they drove to the far south side of the city of Chicago in Kanton's car. There they located a dark green 1950 or 51 Mercury. Ramos jumped the ignition and, following Kanton, drove the stolen car to William Lincoln's garage in Lyons, Illinois and talked with Lincoln. They decided other license plates were needed and upon leaving Lincoln's home Kanton and Ramos stopped just off Harlem Avenue and stole the license plates from two automobiles.

The license plates were left in Kanton's car. The following morning Kanton picked Ramos up and drove past the Riverside Savings and Loan Association, saying to Ramos: "well, that's the score." They went to Lincoln's home and picked up surgical gloves, two .38-caliber revolvers, and some silk-stockings to be used as masks. They then returned to the Riverside Savings and Loan Association. Upon arrival they went up to the door with Ramos shaking it vigorously. Ramos noticed that the door said, "Closed on Mondays" and they left.

The next day, armed and with the masks and gloves, Ramos and Kanton drove to the Riverside Savings and Loan Association. As they entered, a woman was coming out the door in the rear. Kanton, with the use of a gun forced her to sit down in a chair. Ramos had on blue jeans and was carrying a red colored bag.

After finding and placing the money in the bag, both men left by the rear door and got into the automobile parked in the adjacent lot and drove away. They went to Lincoln's home and divided the stolen money into two parts. They counted the money and deducted approximately $85 from each pile, being 10 per cent, and left this money in a paper bag in Lincoln's bedroom with the guns, the gloves and the masks.

Kanton took the stand in his own defense admitting that he had been convicted and sentenced on three prior occasions for savings and loan association robberies in the year 1951 and that he knew Wisniewski, Ramos and Lincoln. Kanton's alibi that at the time of the robbery he was in the U. S. Court House Building in Chicago attempting to see his parole officer was uncorroborated. He admitted that he had failed to see the parole officer and had not registered his visit. This alibi, the veracity for which he alone vouches, was obviously not believed by the jury.

Mrs. Elaine Lincoln testified as a witness for Kanton. She stated that she and her husband were not home on February 9, 1958; that they had engaged a baby sitter and had gone to a movie. Further, she had never seen Ramos before and he had never been in her home; that she was the mother of five children, a housewife and the wife of William Lincoln, also indicted in this case.

There was evidence that on the day of the attempted robbery, February 10, 1958, Kanton was not at work, as that was his day off, and that he did not work at his usual employment on February 11, 1958, the day of the robbery, because he was "tired."

We have delineated the evidence in greater detail than required. We have done so, however, to demonstrate there is no merit in Kanton's contention that the District Court erred in not directing a verdict of acquittal because "the evidence in the record is as consistent with innocence as with guilt."

Kanton complains of, and relies for reversal on, the giving of an instruction concerning circumstantial evidence, "where all the evidence in the case was direct evidence"; the refusal to give an instruction tendered by him, "concerning statements of verbal admissions of the defendant"; the refusal to direct a verdict of acquittal at the close of all the evidence; and improper conduct by the United States Attorney in his cross-examination of defense witness Elaine Lincoln.

■ Kanton does not question that the portion of the charge to the jury on circumstantial evidence is a correct

statement of the law but claims all the evidence was direct and none circumstantial. A mere cursory examination of the record will disclose a vast amount of direct evidence establishing Kanton's guilt but there is also some that is circumstantial. However, any discussion of the charge to the jury would serve no purpose other than to unnecessarily extend this opinion as the record fails to show that Kanton made any objection to any portion of the charge or any omission therefrom as required by Rule 30 of the Federal Rules of Criminal Procedure, 18 U.S.C.A. He cannot, therefore, as a matter of right raise the question for the first time here on appeal. United States v. Furlong, 7 Cir., 1952, 194 F.2d 1, 3; Finnegan v. United States, 8 Cir., 1953, 204 F.2d 105, 115; Zammar v. United States, 8 Cir., 1954, 217 F.2d 223, 227; United States v. Bender, 7 Cir., 1955, 218 F.2d 869, 875; Bram v. United States, 8 Cir., 1955, 226 F.2d 858, 864.

■ The District Court correctly denied Kanton's motion for acquittal. From the entire body of the evidence there is an abundance of substantial evidence establishing Kanton's guilt beyond a reasonable doubt and when viewed in the light most favorable to the Government, as we are bound to do [1]; the evidence of his guilt is overwhelming.

■ Kanton's complaint concerning the cross-examination of defense witness Elaine Lincoln is not well founded. He permitted the questions to be asked and the answers to be made thereto, of which he now complains, without interposing any objection whatsoever. Any error was thereby waived unless it was of such magnitude as to deprive him of substantial justice. Law v. United States, 5 Cir., 1949, 177 F.2d 283; Bram v. United States, 8 Cir., 1955, 226 F.2d 858, 864. No objection having been made and it appearing from the record that Kanton was not deprived of any substantial right we hold no reversible error was committed.

The record here discloses that Kanton was afforded a fair trial free from prejuicial error and terminating in a jury verdict more than adequately supported by substantial evidence. The judgment is correct and should be affirmed.

It is so ordered.

---

1. United States v. Maroy, 7 Cir., 1957, 248 F.2d 663, 664, certiorari denied 355 U.S. 931, 78 S.Ct. 412, 2 L.Ed.2d 414.