DANIEL BENDER, Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Bender v. Commissioner
Docket No. 26641-81.
United States Tax Court
T.C. Memo 1985-375; 1985 Tax Ct. Memo LEXIS 250; 50 T.C.M. (CCH) 538; T.C.M. (RIA) 85375; July 29, 1985. Woodford F. Rowland, for the petitioner (at trial). Jeffrey I. Margolis, for the respondent. COHEN
MEMORANDUM FINDINGS OF FACT AND OPINION COHEN, Judge: Respondent determined a deficiency in petitioner's Federal income taxes and additions to tax as follows: Additions to Tax
Year
Deficiency
Sec. 6653(b)
Sec. 6654 [1]
1977
$1,361,849
$680,925
$48,585
The deficiency resulted from respondent's determination that petitioner received income from activities relating to the illegal importation and sale of hashish. Petitioner concedes that he had such income but disputes the amount of the income, the addition to tax for fraud, and the failure to compute his tax liability by reference *252 to the maximum tax for personal service income. FINDINGS OF FACT Some of the facts have been stipulated, and the stipulations are incorporated herein by this reference. Petitioner was a resident of California at the time he filed his petition herein. Petitioner filed Federal income tax returns for the years 1965 through 1969 and 1971. He did not file any tax returns for the years 1972 through 1981, inclusive. He did not keep any books and records for his income or deductions during 1977. Between October and December 1977, petitioner participated in a conspiracy to import illegally into the United States 1 ton of hashish that had been purchased in Karachi, Pakistan. As of December 1977, the 1 ton shipment of hashish had a wholesale value in the United States of $2,000,000. The cost of the hashish in Pakistan was approximately $50,000. The hashish arrived at San Francisco International Airport between December 3 and December 5, 1977, in 11 crates labeled with Pakistan International Airlines air waybill number 214-1587-3605. *253 The air waybill for the shipment stated that the crates contained marine engine parts. The shipment was consigned to Bay Marine Equipment and Supply Co., a nonexistent company. On or about December 5, 1977, the shipment was taken from the U.S. Customs Service bonded warehouse prior to its inspection by U.S. Customs Service officials. Eleven crates containing equipment and machinery were substituted for the crates containing the hashish. The substitution was accomplished by petitioner and persons acting at his direction, with the assistance of Richard Iremonger (Iremonger), then an employee of TransWorld Airlines, pursuant to arrangements previously made between petitioner and Iremonger. Iremonger's assistance had been solicited during a period of approximately 18 to 20 months preceding the arrival of the hashish into the San Francisco International Airport. Petitioner met with Iremonger in person approximately eight times and had numerous telephone conversations with him for the purpose of planning the transactions. During one of the early meetings, petitioner paid Iremonger approximately $10,000 in cash from a roll of $100 dollar bills he had on his person. Petitioner and *254 Iremonger agreed that Iremonger would receive approximately 25 percent of the proceeds from the sale of the hashish. During these meetings, petitioner told Iremonger about other narcotics transactions in which he had been involved. Petitioner never identified any person to whom petitioner was responsible and, so far as Iremonger knew, petitioner was making all of the decisions relating to the transactions. Substantially all of the hashish was sold by late December 1977. On or before December 15, 1977, Iremonger and others were paid approximately $413,000 in cash for their participation in the removal of the hashish from the Customs Service warehouse. These payments were delivered by petitioner. Petitioner was a fugitive from justice from approximately March 1973 until approximately June 1981. He used numerous false identities during this period. He was arrested in Massachusetts in June 1981. At the time of his arrest in 1981, Customs Service agents searched petitioner's apartment and his 1977 Mercedes Benz 350 SEL and seized various items, including $50,000 cash, materials relating to the use of false identities, and some quantities of hashish, marijuana, and cocaine. On *255 October 19, 1981, petitioner pled guilty and was convicted of conspiracy to import into the United States merchandise contrary to law in violation of 18 U.S.C. 371 and 545, based on the 1977 transactions described above. At the time of his conviction arising out of the 1977 transactions, he was also convicted of conspiracy to possess a controlled substance with intent to distribute, in violation of 21 U.S.C. 846, on the basis of facts occurring prior to and on (or until) November 2, 1972. During the period between the 1977 transactions and his 1981 arrest, petitioner was engaged in various other illegal narcotics activities. OPINION Taxable Income
Respondent contends that petitioner is taxable on the net profit from sale of the hashish imported into the San Francisco Airport in 1977, which respondent calculates, based on the evidence at trial and in reduction of the amount set forth in the notice of deficiency, as $1,510,576. Petitioner contends that he only received $185,000 from his role in the conspiracy to which he entered a guilty plea. Petitioner's testimony is uncorroborated, and he refuses to identify the other participants *256 who allegedly received the balance of the proceeds of sale of the hashish or to provide details as to the manner of disposition of the hashish. Petitioner attributes his refusal to provide identities or details to his privilege against self-incrimination under the Fifth Amendment to the Constitution, although he also admits that he fears retaliation if he names certain of his co-conspirators. Because he was obviously engaged in illegal activities over a long period of time, petitioner's Fifth Amendment claim has some basis in fact, and we do not disregard it. His assertion of that privilege, however, does not relieve him of his burden of proof in this proceeding. See United States v. Rylander,460 U.S. 752, 758 (1983). Because the stipulated or undisputed facts place him in possession of the hashish and establish its value and the sale of it by the end of the year in issue, petitioner has the burden of proving that the income resulting from the sale was not his or that he is entitled to additional deductions beyond those conceded by respondent. See sections 61(a)(1), (2), and (3) and 63; Commissioner v. Glenshaw Glass Co.,348 U.S. 426, 429-430 (1955); *257 Elwert v. United States,231 F.2d 918, 933 (9th Cir. 1956); United States v. Bender,218 F.2d 869, 871 (9th Cir. 1955). Cf. Dellacroce v. Commissioner,83 T.C. 269, 280-284 (1984). Petitioner's assertion that he only received $185,000 from sale of the hashish is not credible for several reasons. As described by him and by Iremonger, petitioner's role was at least that of liaison, planner, cashier, and risk taker. It is highly improbable that he would accept less for his services than Iremonger received for his limited role in substituting crates in the warehouse. Moreover, petitioner's description of his lifestyle as a fugitive and evidence of the circumstances in which he was apprehended are inconsistent with his claim that his only income in 1977 was $185,000. He has not identified any other source of payment of his living expenses during the period following the events in issue here. Petitioner called as an expert witness Robert Breakstone (Breakstone), an attorney with extensive experience in prosecuting and defending Federal narcotics and tax fraud cases. After a summary description of the acts that petitioner and Iremonger *258 has admitted to in relation to the hashish, Breakstone expressed the opinion that petitioner would not be the principal in the operation. The primary reason for Breakstone's opinion was that petitioner was "too much out in front" because he had been in contact with the various individuals effecting the substitution of the shipment. He expressed the further opinion that $185,000 would be "within the appropriate amount of compensation based upon my experience of what Mr. Bender did in this situation." Breakstone was hampered, however, by petitioner's refusal to supply all of the facts necessary to an understanding of the transactions and a reasonable allocation of responsibility and compensation to various participants in the conspiracy. Under these circumstances, the Court is not required to accept the opinion of petitioner's expert. See In re Williams' Estate,256 F.2d 217, 219 (9th Cir. 1958). It may be true that unidentified persons received part of the proceeds of the sale of the hashish. Petitioner, however, has not provided sufficient facts from which to make a determination of the amount paid to others, and we do not accept petitioner's testimony as the amount *259 retained by him. Under these circumstances, petitioner has failed to satisfy his burden of proof, and he is chargeable with the full amount traceable to him, reduced only by the amounts proven as paid to Iremonger and others and the costs stipulated to by respondent. Cf. Gerardo v. Commissioner,552 F.2d 549, 556 (3d Cir. 1977). [2]
Fraud
Respondent, of course, has the burden of proving fraud in order to sustain the addition to tax under section 6653(b). Section 7454(a); Rule 142(b), Tax Court Rules of Practice and Procedure. This burden is met if it is shown that the taxpayer intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of such taxes. Stoltzfus v. United States,398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner,394 F.2d 366 (5th Cir. 1968), affg. a Memorandum Opinion of this Court. The existence of fraud is a question of fact to be resolved upon consideration of the entire record. Gajewski v. Commissioner,67 T.C. 181, 199 (1976), *260 affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud will never be presumed. Beaver v. Commissioner,55 T.C. 85, 92 (1970). Fraud may, however, be proved by circumstantial evidence because direct proof of the taxpayer's intent is rarely available. The taxpayer's entire course of conduct may establish the requisite fraudulent intent. Stone v. Commissioner,56 T.C. 213, 223-224 (1971); Otsuki v. Commissioner,53 T.C. 96, 105-106 (1969). Failure to file tax returns, without more, is not proof of fraud; such omission may be consistent with a state of mind other than the intention and expectation of defeating the payment of taxes. Stoltzfus v. United States,supra;Cirillo v. Commissioner,314 F.2d 478, 482 (3d Cir. 1963), reversing a Memorandum Opinion of this Court. Failure to file, however, may be considered in connection with other facts in determining whether an underpayment of tax is due to fraud. Beaver v. Commissioner,supra at 93. Here petitioner argues that his failure to file tax returns was due to his fugitive status and not to *261 an attempt to evade taxes. He claims that he would have liked to file tax returns. Petitioner's assertion again is not credible, and his legal contention may be given short shrift. Petitioner admits that he had income of at least $185,000 in 1977 and that he failed to file tax returns over a period of years, and his filing of tax returns in earlier years indicates an awareness of his obligation to file returns. The fact that he may have had a dual motive in failing to file and other acts of concealment, such as use of false identities, does not relieve him of the addition to tax for fraud. See, e.g., Commissioner v. Smith,285 F.2d 91 (5th Cir. 1960),affg. a Memorandum Opinion of this Court; Herberger v. Commissioner, a Memorandum Opinion of this Court dated June 28, 1950, affd. 195 F.2d 293 (9th Cir. 1952). The addition to tax for fraud is appropriate in this case to reimburse the Government for the heavy expense of investigation and the loss resulting from petitioner's conduct. See Helvering v. Mitchell,303 U.S. 391, 401 (1938). Maximum Tax Computation
In his petition and at trial, petitioner's counsel raised the issue *262 of applicability of the maximum tax on earned income in computing petitioner's tax liability for 1977. After trial, petitioner's counsel withdrew, and no brief was filed on behalf of petitioner. Respondent did not address this issue is his brief. We do not, therefore, have the benefit of the parties' views of the evidence for a clear statement of their respective position on this issue. [3]
Section 1348(a), in effect in 1977, prescribed a 50 percent maximum tax rate limitation with respect to "personal service taxable income." Section 1348(b)(1)(A) defined the term "personal service income" to include any income which is "earned income" within the meaning of section 401(c)(2)(C) or section 911(b). Section 911(b) defined the term "earned income" to include "amounts received as compensation for personal services actually rendered" and further provided that, if the taxpayer was engaged in a trade or business in which *263 both personal services and capital are material income-producing factors, "a reasonable allowance as compensation for the personal services rendered by the taxpayer, not in excess of 30 percent of his share of the net profits of such trade or business, shall be considered as earned income." See also sec. 1.1348-3(a)(3)(i), Income Tax Regs.
In relation to determining the amount of income attributable to petitioner, we have implicitly rejected for lack of credible evidence his claims that he was merely an exployee of someone else. We have no reliable evidence that he did not actually purchase the hashish with his own funds and then resell it for his own account. The evidence that petitioner was engaged in illegal narcotics transactions before and after the years in issue supports the conclusion that his trade or business was the purchase and resale of the hashish. The fact that the trade or business was illegal does not in itself compel different tax results. See Commissioner v. Sullivan,356 U.S. 27 (1958). [4]
*264 Thus the threshold issue is whether capital was a material income-producing factor in petitioner's business so that the 30 percent limitation applies.Section 1.1348-3(a)(3)(ii) prescribes the test for this determination: (ii) Whether capital is a material income-producing factor must be determined by reference to all the facts of each case. Capital is a material income-producing factor if a substantial portion of the gross income of the business is attributable to the employment of capital in the business, as reflected, for example, by a substantial investment in inventories, plant, machinery, or other equipment. In general, capital is not a material income-producing factor where gross income of the business consists principally of fees, commissions, or other compensation for personal services performed by an individual. Thus, the practice of his profession by a doctor, dentist, lawyer, architect, or accountant will not, as such, be treated as a trade or business in which capital is a material income-producing factor even though the practitioner may have a substantial capital investment in professional equipment or in the physical plant constituting the office from which he *265 conducts his practice since his capital investment is regarded as only incidental to his professional practice. See also Gaudern v. Commissioner,77 T.C. 1305 (1981); Moore v. Commissioner,71 T.C. 533 (1979); Bruno v. Commissioner,71 T.C. 190 (1978). It is apparent in this case that profits from the business were attributable to a combination of capital and services. Petitioner has failed to present sufficient facts to establish the respective contributions of each element, and he has the burden of proving that the capital element was not material. See Welch v. Helvering,290 U.S. 111 (1933); Rule 142(a), Tax Court Rules of Practice and Procedure. He has not done so. Thus the maximum amount that may be subject to the 50 percent tax limitation is 30 percent of the net profits of the business. Using our best judgment on the facts in evidence, we conclude that 30 percent is a reasonable allowance for the personal services performed by petitioner. The computation of tax should, therefore, apply a 50 percent maximum tax to 30 percent of the net profit of $1,510,576. Decision will be entered under Rule *266 155.
Footnotes
1. Unless otherwise indicated, all statutory references are to the Internal Revenue Code of 1954, as amended and in effect during the year in issue.↩
2. See also Estate of Simkins v. Commissioner,T.C. Memo. 1978-338↩.
3. We might assume that petitioner's failure to file a brief constitutes an abandonment of that claim. See Calcutt v. Commissioner,84 T.C. 716↩ (1985). Because the evidence does show that the claim has some merit, however, we decide the issue.
4. Section 280E prohibits deductions for amounts paid or incurred after September 3, 1982, in the illegal trafficking in certain drugs. Thus, as the Supreme Court anticipated in Commissioner v. Sullivan,356 U.S. 27 (1958), Congress may enact a special rule applicable to illegal businesses. It did not do so in the context of section 1348. See also section 162(f) and Holmes Enterprise Inc. v. Commissioner,69 T.C. 114 (1977) and Holt v. Commissioner,69 T.C. 75 (1977), affd. 611 F.2d 1160↩ (5th Cir. 1980), dealing with deductions contrary to sharply defined national policy.