T.C. Memo. 1998-267

UNITED STATES TAX COURT

JOHN BOYD TENNEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 13707-93.                    Filed July 21, 1998.

John Boyd Tenney, pro se.

<u>S. Mark Barnes</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

SWIFT, <u>Judge</u>:  Respondent determined deficiencies in
petitioner's Federal income taxes and additions to tax as
follows:

| | | Additions to Tax | | |
|---|---|---|---|---|
| | | Sec. | Sec. | Sec. |
| Year | Deficiency | 6653(b)(1) | 6653(b)(2) | 6654 |
| 1984 | $   43,110 | $21,555 | * | $ 2,710 |
| 1985 | 10,601 | 5,301 | * | 607 |
| | | Sec. 6653(b)(1)(A) | Sec. 6653(b)(1)(B) | |
| 1986 | 134,065 | $100,549 | * | 6,487 |
| 1987 | 1,180,713 | 885,535 | * | 63,770 |
| | | Sec. 6653(b)(1) | | |
| 1988 | 62,861 | $47,146 | -- | 4,023 |
| | | Sec. 6651(f) | | |
| 1989 | 56,139 | $41,561 | -- | 3,744 |

\*   50 percent of interest due on portion of underpayment attributable to fraud.

Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.

After settlement of some issues, the issues for decision are: (1) Whether petitioner received unreported income; (2) whether petitioner is entitled to certain claimed deductions; and (3) whether petitioner is liable for the fraud and other additions to tax.

For the years in issue, petitioner has not filed Federal income tax returns. Because petitioner did not maintain adequate books and records, respondent determined petitioner's income

under a combination of the specific item and bank deposits methods of proof.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.

When the petition was filed, petitioner resided in Salt Lake City, Utah.

During the years in issue, funds were transferred to petitioner from relatives, friends, and others (hereinafter jointly referred to as investors), and petitioner used the funds to make numerous investments in publicly traded stock.

For each year in issue, the identity of most investors who transferred funds to petitioner, the total amount of funds transferred to petitioner, and the nature and purpose of funds transferred to petitioner are not established in the record.

During 1984 through 1989, after receipt of funds from investors, petitioner generally did not treat the funds received from investors as the funds of the investors. Rather, petitioner deposited the funds received from investors into his personal bank accounts, and petitioner used the funds to enter into numerous transactions for the purchase and sale of stock and commodities on his own behalf.

With funds received from investors, petitioner also participated in promotional and market manipulation of the stock of a number of corporations, including Cellwest, Inc. (Cellwest),

a publicly traded Utah corporation of which petitioner was president.

When investors requested an accounting of funds transferred to petitioner, petitioner did not provide such an accounting, and petitioner did not otherwise disclose to investors the status of the funds.

Because petitioner used the funds received from investors to invest on his own behalf, specific, identifiable proceeds realized on transactions petitioner entered into with the funds constitute proceeds and specific items of capital gain or loss realized by petitioner personally, adjusted for petitioner's tax bases in the various transactions where his tax bases are established in the record.

Also, petitioner realized additional items of specific, identifiable income in the form of partnership distributions, royalties, interest income, fees, and various checks that were not deposited into petitioner's bank accounts but that were either made payable to petitioner or endorsed over to petitioner.

The following schedule summarizes, separately for each year in issue and by category of income only, the total of the specific items of income that petitioner realized, that were determined by respondent, and that we sustain:[1]

---

[1]  The total income figures reflected in the schedule take into account any tax basis in the various specific stock and commodity investments that petitioner has established.

| Year | Category of Income | Amount | Total |
|------|--------------------|--------|-------|
| 1984 | Gain from sale of stock and commodities | $ 86,914 | |
| | Partnership distributions | 11,324 | |
| | Royalties | 1,213 | |
| | | | $ 99,451 |
| 1985 | Gain from sale of stock and commodities | $ 15,385 | |
| | Interest | 7,731 | |
| | | | $ 23,116 |
| 1986 | Loss from sale of stock and commodities | $ (5,313) | |
| | | | $ (5,313) |
| 1987 | Loss from sale of stock and commodities | $(64,130) | |
| | Interest | 154 | |
| | Checks not deposited into petitioner's bank accounts | 145,430 | |
| | | | $ 81,454 |
| 1988 | Gain from sale of stock and commodities | $ 27,226 | |
| | Interest | 71 | |
| | Fees | 15,000 | |
| | Checks not deposited into petitioner's bank accounts | 44,100 | |
| | | | $ 86,397 |
| 1989 | Gain from sale of stock and commodities | $ 83,165 | |
| | Fees | 59,155 | |
| | | | $142,320 |

Also, during the years in issue, petitioner maintained one personal bank account at each of the two banking institutions indicated below, and petitioner made total deposits into these two personal bank accounts in the amounts indicated:

| Year | Banking Institution | | Total Bank Deposits |
|------|---------------------|--|---------------------|
| 1985 | Deseret Fed Sav & Loan Assoc | | $ 7,736 |
| 1986 | Deseret Fed Sav & Loan Assoc | | 189,773 |
| 1987 | Deseret Fed Sav & Loan Assoc | $1,149,642 | |
| | Guardian State Bank | 255,678 | 1,405,320 |
| 1988 | Guardian State Bank | | 34,532 |

Also, in 1986 and 1987, petitioner deposited funds in the total amounts of $87,665 and $176,130, respectively, into a corporate bank account at Zions First National Bank in the name of ReCom, Inc., a company related to Cellwest.  Petitioner was a signatory on this corporate account.

In 1986, from funds deposited into a money market account at Merrill Lynch in petitioner's name and from funds deposited into his bank account at Guardian State Bank, petitioner paid the following business expenses for various consulting services:

| Year | Consulting Services |
|------|---------------------|
| 1986 | $ 17,488 |
| 1987 | 121,190 |
| 1988 | 30,100 |

In 1986, petitioner filed for bankruptcy, and in January of 1987, petitioner received a discharge of many of his debts. Also, in 1987, after having pledged as collateral his personal residence and stock that he owned to obtain a loan for a corporation, petitioner lost his personal residence in foreclosure of the loan.

Since 1987, petitioner and his family have lived in a rental home.

Beginning in the late 1980's, a number of lawsuits were filed against petitioner on behalf of investors to recover funds transferred to petitioner.

In 1993, petitioner was convicted in Utah State court of securities fraud, of selling unregistered securities, and of selling securities as an unregistered agent.

As indicated, petitioner did not maintain adequate books and records relating to the income he realized on his investments, to the various investor funds that were transferred to and received by him, and to his business expenses.

For 1984 through 1989, petitioner did not make estimated tax payments, and for those years, petitioner has never filed individual Federal income tax returns.  In fact, it appears that, for at least 16 years (1978 through 1993), petitioner has failed to file individual Federal income tax returns.

During respondent's audit, petitioner was generally uncooperative.  For example, petitioner specifically denied to respondent's agent that he owned any bank accounts.

On audit and in the notice of deficiency for the years in issue, using a combination of the specific item and bank deposits methods of proof, respondent charged petitioner with total unreported income for each year as follows:

| Year | Unreported Income |
|------|-------------------|
| 1984 | $ 102,985 |
| 1985 | 34,459 |
| 1986 | 281,042 |
| 1987 | 3,072,219 |
| 1988 | 197,223 |
| 1989 | 173,946 |

In respondent's determination for each year of additional income to be charged to petitioner under the bank deposits method of proof, it appears that respondent did not credit against total unexplained bank deposits the specific items of income that respondent charged to petitioner under the specific item method of proof. Also, for lack of substantiation, respondent disallowed the majority of the losses claimed by petitioner during the audit relating to petitioner's investments.

For each of the years in issue, respondent also determined that petitioner was liable for additions to tax for fraud and for failure to pay estimated tax.

After trial, respondent made certain concessions and adjustments. For 1984 through 1987, respondent adjusted downward respondent's income determinations for petitioner to reflect petitioner's tax basis that was established in many specific transactions. For 1988 and 1989, without amending his answer, respondent attempted to adjust upward respondent's income determination for petitioner on the basis of deposits into two additional checking accounts at Utah Central Credit Union that respondent became aware of for the first time during trial.[2]

---

[2]   In respondent's brief, respondent asserts that for 1988 and 1989 petitioner received additional unreported income of $218,257 and $113,935, respectively, based on deposits into the two additional accounts in petitioner's name at Utah Central Credit Union.

The schedule below reflects for each of the years in issue a summary of the revised, posttrial total income charged by respondent to petitioner on the basis of (1) categories of specific items of income and loss determined by respondent and (2) deposits into petitioner's and ReCom's bank accounts that respondent treats as taxable income to petitioner, including the additional deposits that respondent charges to petitioner, as income after trial:

| Year | Category of Income and Bank Deposits | Amount | Total |
|------|--------------------------------------|--------|-------|
| 1984 | Gain from sale of stock and commodities | $ 86,914 | |
| | Partnership income | 11,324 | |
| | Royalties received | 1,213 | |
| | | | $ 99,451 |
| 1985 | Gain from sale of stock and commodities | $ 15,385 | |
| | Interest | 7,731 | |
| | Bank deposits | | |
| | Deseret Fed Sav & Loan Assoc | 7,376 | |
| | | | $ 30,492 |
| 1986 | Loss from sale of stock and commodities | $ (5,313) | |
| | Bank deposits | | |
| | Deseret Fed Sav & Loan Assoc | 189,773 | |
| | Zions First National Bank | 87,665 | |
| | | | $ 272,125 |
| 1987 | Loss from sale of stock and commodities | $ (64,130) | |
| | Interest | 154 | |
| | Checks | 477,859 | |
| | Loss carryover from 1986 | (17,431) | |
| | Bank deposits | | |
| | Deseret Fed Sav & Loan Assoc | 1,149,642 | |
| | Guardian State Bank | 255,678 | |
| | Zions First National Bank | 176,130 | |
| | | | $1,977,902 |

| 1988 | Gain from sale of stock and commodities | $ | 27,226 |
| | Interest | | 71 |
| | Compensation | | 15,000 |
| | Checks | | 114,080 |
| | Judgments against petitioner | | (88,222) |
| | Bank deposits | | |
| |    Guardian State Bank | | 34,532 |
| |    Utah Central Credit Union | | 102,199 |
| |    Utah Central Credit Union | | 116,058 |
| | | $ | 320,944 |

| 1989 | Gain from sale of stock and commodities | $ | 83,165 |
| | Compensation | | 59,155 |
| | Judgments against petitioner | | (10,851) |
| | Bank Deposits | | |
| |    Utah Central Credit Union | | 34,925 |
| |    Utah Central Credit Union | | 79,010 |
| | | $ | 245,404 |

OPINION

Where a taxpayer fails to maintain adequate books and records, respondent is entitled to reconstruct a taxpayer's income by any reasonable method. Sec. 446(b); Erickson v. Commissioner, 937 F.2d 1548, 1553 (10th Cir. 1991), affg. T.C. Memo. 1989-552; Parks v. Commissioner, 94 T.C. 654, 658 (1990); United Dressed Beef Co. v. Commissioner, 23 T.C. 879, 885 (1955).

Section 61 provides that gross income includes all income from whatever source derived. Commissioner v. Glenshaw Glass Co., 348 U.S. 426, 431 (1955). Income "constitutes taxable income when * * * [a taxpayer] has such control over it that, as a practical matter, * * * [the taxpayer] derives readily realizable economic value from it." Rutkin v. United States, 343 U.S. 130, 137 (1952).

Generally, for purposes of tax deficiencies determined in respondent's notices of deficiency, bank deposits are treated as prima facie evidence of receipt of taxable income, and respondent need not prove a taxable source of the deposits. Parks v. Commissioner, supra; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986); Estate of Mason v. Commissioner, 64 T.C. 651, 657 (1975), affd. 566 F.2d 2 (6th Cir. 1977).

As explained, respondent argues that petitioner should be taxed (1) under the specific item method of proof on specific items of income that the evidence indicates petitioner received during the years in issue (including gain petitioner realized on the sale of stock and commodities and on funds petitioner received from checks that were not deposited into petitioner's bank accounts but that were made payable to petitioner or endorsed over to petitioner) and (2) under the bank deposits method of proof on funds deposited into petitioner's personal and ReCom's bank accounts.

Respondent contends that petitioner's participation on his own behalf in numerous transactions for the purchase and sale of stock and commodities and petitioner's treatment as his own of funds received from investors constitute the primary taxable source of bank deposits charged to petitioner as taxable income.

Petitioner contends that funds he received from investors were all invested on behalf of investors, that gains realized on the sale of stock and commodities should not be treated as

taxable income to him, and that in any event, if the large losses and business expenses he incurred over the years are allowed, it will be clear that net losses, not gains, were realized from petitioner's numerous investment and business activities.

On the evidence in this case, we have found that under the specific item method of proof petitioner is to be charged with the following total gains and allowed the following total losses from the sale of stock and commodities for each year:

| Year | Specific Items of Gain and Loss |
|------|---------------------------------|
| 1984 | $ 86,914 |
| 1985 | 15,385 |
| 1986 | (5,313) |
| 1987 | (64,130) |
| 1988 | 27,226 |
| 1989 | 83,165 |

Petitioner has not substantiated tax bases in the above sale transactions in excess of those allowed by respondent.

Also, as we have found, petitioner is to be charged with totals of $12,537 for 1984, $7,731 for 1985, $154 for 1987, $15,071 for 1988, and $59,155 for 1989 in additional ordinary income with regard to specific items of partnership distributions, royalties, interest income, and fees.

For 1987 and 1988, also under the specific item method of proof, respondent treats bank checks in the totals of $477,859 and $114,080, respectively (that petitioner received but which were not deposited into petitioner's bank accounts), as

additional specific items of taxable income to petitioner.  Of the above checks, checks in the totals of $145,430 and $44,100, respectively for each year, were either made payable directly to petitioner or endorsed over to petitioner.  Petitioner claims that these specific checks relate to a stock trading scheme involving petitioner and other individuals who transferred the same funds back and forth to manipulate the price of stock, and therefore that these checks should not be treated as taxable income to petitioner.  Petitioner has not presented credible evidence of this alleged stock manipulation scheme, and the above checks are to be treated as specific items of taxable income to petitioner.

Certain additional checks in the totals of $332,430 and $69,980 that were not deposited into petitioner's bank accounts in 1987 and 1988, respectively, and that were charged by respondent to petitioner as additional items of specific income were not made payable to petitioner.  They were not endorsed over to petitioner, nor were they deposited into petitioner's bank accounts.  Respondent's theory for charging these checks to petitioner as specific items of taxable income appears to be that on some of the checks petitioner's name was written on the memo line.  Petitioner is not the indicated payee on these checks, and the evidence does not establish that these checks benefited petitioner.  Funds represented by these checks are not to be treated as constituting specific items of income to petitioner.

With regard generally to respondent's bank deposits analysis of additional income received by petitioner, the evidence indicates that petitioner realized substantial proceeds from the sale of stock and commodities. Also, petitioner deposited funds received from investors into his personal bank accounts, and petitioner invested those funds for his personal benefit. Accordingly, those funds are to be treated as converted to petitioner's personal use and as a taxable source of deposits into petitioner's bank accounts. It is thus established that at least two taxable sources existed for the large deposits made into petitioner's personal bank accounts (namely, proceeds from the sale of stock and commodities and investor funds converted to petitioner's personal use).

Under the bank deposits method of proof and for purposes of the tax deficiencies at issue herein, we conclude that for 1985, 1986, 1987, and 1988, total deposits of $7,376, $189,773, $1,405,320, and $34,532, respectively, into petitioner's personal bank accounts are to be treated as taxable income to petitioner. No credible evidence indicates that petitioner used those funds for business purposes.

The funds, however, deposited in 1986 and 1987 into ReCom's corporate bank account at Zions First National Bank in the total amounts of $87,665 and $176,130, respectively, should not be treated as taxable income to petitioner. No credible evidence

indicates that petitioner used these funds deposited into this corporate account for personal purposes.

Total deposits of $218,257 and $113,935, respectively for 1988 and 1989, into petitioner's accounts at Utah Central Credit Union that respondent, on brief, seeks to add to his determination of petitioner's additional income under the bank deposits method of proof, were not properly raised by respondent by answer or by motion, and we decline to allow respondent to raise these deposits for the first time on brief.  Rule 41.

Because specific items of income that we charge to petitioner herein could have been the source of unexplained deposits into petitioner's bank accounts, to the extent respondent has not credited against total unexplained bank deposits charged as income to petitioner the specific items of income that we charge to petitioner under the specific item method of proof (other than the $145,430 and $44,100 for 1987 and 1988, respectively, that we charge to petitioner as specific items of income arising from checks not deposited into petitioner's bank accounts), petitioner, in the Rule 155 computation, is to be given credit therefor.

With regard to petitioner's claim that he incurred substantial additional losses and expenses in each year that the Court should allow as additional business expenses, we have found that petitioner has established that he paid $17,488 in 1986, $121,190 in 1987, and $30,100 in 1988 in business expenses from

funds deposited into his money market account at Merrill Lynch and from his bank account at Guardian State Bank. Petitioner is to be allowed these expenses as deductible business expenses. Petitioner's claim to additional losses and expenses beyond those allowed herein is not supported by the evidence and is denied.

We reject petitioner's general claim that over the years in issue he never realized any bottom line net income and that he realized over the years in issue total losses in excess of $20 million. No credible evidence supports the nature and amount of petitioner's claim to total net losses in any of the years before us.

Petitioner points to his bankruptcy filing and to the loss of his residence, and petitioner argues that respondent should have performed a net worth analysis of petitioner's income for the years in issue. Petitioner alleges that such a net worth analysis would have corroborated losses he claims to have realized over the years. Respondent, in this case, is under no obligation to make such a net worth computation. As indicated, respondent is entitled to reconstruct petitioner's income by any reasonable method. Erickson v. Commissioner, 937 F.2d at 1553; United Dressed Beef Co. v. Commissioner, 23 T.C. at 885.

With the exceptions noted, we sustain respondent's determination of petitioner's taxable income for each of the years in issue under the specific item and the bank deposits methods of proof.

Fraud and Other Additions to Tax

For 1984 and 1985, if any portion of a tax underpayment is attributable to fraud, the addition to tax for fraud under section 6653(b)(1) equals 50 percent of the total underpayment of tax, and increased interest under section 6653(b)(2) equals 50 percent of interest payable under section 6601 but only with respect to that portion of the underpayment that is attributable to fraud. Respondent has the burden of proving what portion of the underpayment is attributable to fraud.

For 1986, 1987, and 1988, the addition to tax for fraud under section 6653(b)(1) equals 75 percent of that portion of a tax underpayment that is attributable to fraud, and for 1986 and 1987, increased interest under section 6653(b)(1)(B) equals 50 percent of interest payable under section 6601 with respect to that portion of a tax underpayment that is attributable to fraud.

For 1986, 1987, and 1988, where respondent proves that any part of a taxpayer's underpayment of income tax is due to fraud, fraud is presumed with respect to the entire underpayment unless the taxpayer proves otherwise by a preponderance of the evidence. Sec. 6653(b)(2).

For 1989, if a taxpayer fraudulently fails to file a tax return, the fraudulent failure to file addition to tax under section 6651(f) provides for an addition to tax equal to 15 percent of the amount required to be shown as tax on the

return for every month the return is late, but not to exceed 75 percent.

To establish fraud for each of the years in issue, respondent has the burden to prove by clear and convincing evidence that a taxpayer underpaid the taxpayer's correct tax liability and that part of the underpayment was due to fraudulent intent.  Sec. 7454(a); Rule 142(b); Zell v. Commissioner, 763 F.2d 1139, 1142 (10th Cir. 1985), affg. T.C. Memo. 1984-152; Clayton v. Commissioner, 102 T.C. 632, 646 (1994); Recklitis v. Commissioner, 91 T.C. 874, 909 (1988).

Where allegations of fraud are intertwined with unreported and indirectly reconstructed income, respondent is required to establish a likely source for the alleged unreported income. DiLeo v. Commissioner, 96 T.C. 858, 873 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Parks v. Commissioner, 94 T.C. at 661.

With respect to the fraud addition to tax only, bank deposits will not be treated as taxable income unless respondent proves a likely taxable source of the bank deposits or disproves nontaxable sources alleged by the taxpayer.  Parks v. Commissioner, supra at 661.

For fraud purposes, a taxpayer is generally required to present probative evidence of deductions not previously claimed before respondent bears any burden of proof with regard to alleged additional deductions claimed by a taxpayer.  See United

States v. Bender, 218 F.2d 869 (7th Cir. 1955); Rivera v. Commissioner, T.C. Memo. 1979-343.

With regard to fraudulent intent, respondent is required to prove that a taxpayer intended to evade taxes by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Parks v. Commissioner, supra at 661; Frazier v. Commissioner, 91 T.C. 1, 12 (1988).

Generally, fraud is established by circumstantial evidence because direct evidence of fraud is not available. Clayton v. Commissioner, supra at 647; Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). Courts have developed certain indicia of fraud, including the following: (1) Understatements of income; (2) inadequate books and records; (3) unfiled tax returns; (4) lack of cooperation with tax authorities; (5) implausible or inconsistent explanations of behavior; (6) concealed assets; and (7) illegal activity. Bradford v. Commissioner, 796 F.2d 303, 307-308 (9th Cir. 1986), affg. T.C. Memo. 1984-601; Clayton v. Commissioner, supra at 647; Petzoldt v. Commissioner, 92 T.C. 661, 699-700 (1989); Recklitis v. Commissioner, supra at 910.

As indicated, petitioner argues that for the years in issue he realized large losses, that he had no Federal income tax liability, and therefore that no underpayment of tax exists. Petitioner also argues that respondent has not established that he fraudulently failed to file income tax returns and fraudulently underpaid his correct Federal income tax liability.

Petitioner claims that he did not file income tax returns for the years in issue because he received no salary or wages and because he earned no income.

In our consideration of the fraud addition to tax, we must consider petitioner's taxability on the specific items of income and on the deposits into his bank accounts and petitioner's claimed losses and expenses in light of the placement of the burden of proof on respondent by clear and convincing evidence.

For 1984, 1985, 1987, 1988, and 1989, the specific items that we have charged to petitioner as income are established by clear and convincing evidence, and the large expenses and losses that petitioner claims are not supported by any credible evidence.

With regard to the income charged to petitioner under the bank deposits method of proof, respondent has established likely taxable sources of the bank deposits, and petitioner makes no credible argument as to nontaxable sources of those deposits. Accordingly, for fraud purposes, we treat all of the unexplained bank deposits as additional income to petitioner.

In the schedule below and for purposes of analyzing the imposition of the fraud addition to tax, we set forth our calculations of petitioner's net income for each year in issue, reflecting all expenses and losses that are allowed by respondent and that are allowed herein:

| Year | Category of Income, Expenses and Losses | Amount | Total |
|------|------------------------------------------|--------|-------|
| 1984 | Gain from sale of stock and commodities | $ 86,914 | |
| | Partnership distributions | 11,324 | |
| | Royalties | 1,213 | |
| | | | $ 99,451 |
| 1985 | Gain from sale of stock and commodities | $ 15,385 | |
| | Interest | 7,731 | |
| | Bank deposits | | |
| | Deseret Fed Sav & Loan Assoc | 7,376 | |
| | | | $ 30,492 |
| 1986 | Loss from sale of stock and commodities | $ (5,313) | |
| | Bank deposits | | |
| | Deseret Fed Sav & Loan Assoc | 189,773 | |
| | Business expenses | (17,488) | |
| | | | $ 166,972 |
| 1987 | Loss carryover from 1986 | $ (17,431) | |
| | Loss from sale of stock and commodities | (64,130) | |
| | Interest | 154 | |
| | Checks not deposited into petitioner's bank accounts | 145,430 | |
| | Bank deposits | | |
| | Deseret Fed Sav & Loan Assoc | 1,149,642 | |
| | Guardian State Bank | 255,678 | |
| | Business expenses | (121,190) | |
| | | | $1,348,153 |
| 1988 | Gain from sale of stock and commodities | $ 27,226 | |
| | Interest | 71 | |
| | Fees | 15,000 | |
| | Checks not deposited into petitioner's bank accounts | 44,100 | |
| | Bank deposits | | |
| | Guardian State Bank | 34,532 | |
| | Business expenses | (30,100) | |
| | Judgments against petitioner | (88,222) | |
| | | | $ 2,607 |
| 1989 | Gain from sale of stock and commodities | $ 83,165 | |
| | Fees | 59,155 | |
| | Judgments against petitioner | (10,851) | |
| | | | $ 131,469 |

Based on the above calculations, there exist substantial understatements of income for each of the years 1984 through 1987

and for 1989.  For 1988, the understatement of $2,607 may, in isolation, not be regarded as substantial, but it does constitute an understatement, and taken together with those of the other years it reflects a pattern of understatement for all of the years.[3]

With regard to fraudulent intent, the evidence establishes for each year in issue that petitioner realized significant income that he failed to report, that petitioner failed to pay significant tax liabilities, that petitioner failed to maintain adequate books and records, that petitioner failed to file income tax returns, and that petitioner did not cooperate with respondent.  Petitioner attempted to conceal assets and bank accounts, and petitioner misled respondent's agents.  Petitioner did not file Federal income tax returns for the years in issue during which he realized substantial income.

We conclude that for each of the years in issue respondent has proven by clear and convincing evidence that petitioner fraudulently intended to evade his correct Federal income tax liabilities.

---

[3]    As explained supra p. 15, to the extent respondent has not credited against total unexplained bank deposits charged as income to petitioner the specific items of income that we charge to petitioner under the specific item method of proof, petitioner, in the Rule 155 computation, is to be given credit therefor, and adjustments to the above calculations will be necessary and may affect the amount of the understatements for each year.

For each year, we conclude that the increases to petitioner's taxable income that we have sustained herein relating to the specific items of income and to the bank deposits are attributable to fraud.

Section 6654(a) provides for an addition to tax for failure to make timely estimated income tax payments.  Petitioner has not proven that an exception applies, and for each year in issue petitioner is liable for the section 6654 addition to tax.

To reflect the foregoing,

Decision will be entered under Rule 155.