JAMES R. WILLIAMS, JR., Petitioner v. COMMISSIONER OF INTERNAL REVENUE, Respondent; JAMES R. WILLIAMS, JR., AND VICKI L. WILLIAMS, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Williams v. Commissioner
Docket Nos. 19278-92, 19462-92
United States Tax Court
T.C. Memo 1994-560; 1994 Tax Ct. Memo LEXIS 565; 68 T.C.M. (CCH) 1172; 68 Trade Cas. (CCH) P1172; November 3, 1994, Filed *565 Decisions will be entered under Rule 155. James R. Williams, Jr., pro se. For respondent: Ronald T. Jordan. RUWE
RUWE
MEMORANDUM OPINION RUWE, Judge: Respondent determined deficiencies in petitioners' Federal income taxes and additions to tax as follows: James R. Williams, Jr. docket No. 19278-92
Additions to Tax Year
Deficiency
Sec. 6653(b)
Sec. 6654
1979
$ 77,600.68
$ 38,800.34
$ 3,235.48
1980
13,451.57
6,725.78
857.07
1981
20,658.10
10,329.05
--
Additions to Tax Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)(1)
Sec. 6653(a)(2)
1982
$ 1,312.24
$ 328.06
$  65.61
[1]
1983
345.21
86.30
17.26
[1]
1984
789.07
197.26
39.45
[1]
1985
2,531.14
632.79
126.56
[1]
Additions to Tax Year
Deficiency
Sec. 6651(a)(1)
Sec. 6653(a)(1)(A)
Sec. 6653(a)(1)(B)
1986
$ 3,117.95
$ 779.49
$ 155.90
[1]
1987
57.31
100.00
2.87
[1]
James R. Williams, Jr., and Vicki L. Williams
docket No. 19462-92
Addition to Tax
Year
Deficiency
Sec. 6653(b) 1978
$ 37,267.66
$ 18,633.83
*566 After concessions, the issues for decision are: (1) Whether petitioners underreported income during the years in issue; (2) whether petitioners are entitled to additional deductions for the years in issue; (3) whether petitioner James R. Williams, Jr., [1] is liable for the addition to tax for fraud under section 6653(b) [2] for the taxable years 1978, 1979, and 1980; [3] (4) whether petitioner is liable for the addition to tax for failure to file a timely return under section 6651(a)(1) for the taxable years 1982 through 1987; and (5) whether petitioner is liable for the addition to tax for negligence under section 6653(a) for the taxable years 1982 through 1987. *567 Some of the facts have been stipulated and are so found. The stipulation of facts and the attached exhibits are incorporated herein by this reference. For purposes of convenience, our findings of fact with respect to respondent's specific determinations will be combined with our opinion on each issue. Background
Petitioners resided in Zionsville, Indiana, when they filed their petitions. Petitioners filed a joint Federal income tax return for the taxable year 1978. On March 27, 1989, petition filed delinquent returns for taxable years 1979 through 1987. Petitioner's filing status on these returns was shown as married filing separately. With respect to taxable years 1979 through 1985, [4] petitioner had previously submitted to respondent Forms 1040 in which each relevant line contained the word "object", except that on line 8 of petitioner's 1979 Form 1040, he reported wages of $ 8,587.01. On separate occasions, respondent sent letters to petitioner indicating that the Forms 1040 filed by petitioner for his taxable years 1979 through 1984 [5] were not acceptable "because [they did] not contain information required by law, and [they did] not comply with the Internal Revenue *568 Code requirements." On January 21, 1987, petitioner was indicted for evasion of Federal income taxes under section 7201 for the taxable years 1978, 1979, and 1980. On August 17, 1987, a Plea Agreement was filed with the District Court for the Southern District of Indiana in which petitioner agreed to plead guilty to tax evasion under section 7201 for the taxable year 1979. Furthermore, in paragraph 6 of the Plea Agreement, petitioner conceded that section 6653(b), the civil fraud penalty, was applicable to any underpayment of personal income taxes determined for his taxable years 1978, 1979, and 1980. Pursuant to paragraph 5 of the Plea Agreement, petitioner agreed to file returns for the taxable years 1978 through 1985, which returns he filed on March 27, 1989. On October 15, 1987, petitioner was convicted of tax evasion under *569 section 7201 for the taxable year 1979. During the years at issue, petitioner sold insurance, securities, and other types of investments, and he promoted partnership ventures and tax shelters. Petitioner was also the managing partner of Frozen Creek Associates and the trustee of Bank Creek Coal Trust, Speedway Coal Trust, and the Edward B. Morris Coal Trust. In addition, petitioner was the president/owner of Financial Sheltering Corp., a corporation that engaged in the securities business as a broker-dealer. In 1979, petitioner incorporated a business entity, Economic Energy Enterprise, Inc., of which he was the president and sole shareholder. Petitioners maintained a joint personal checking account at the Boone County State Bank (Boone) in Lebanon, Indiana. Petitioner Vicki L. Williams also maintained a separate personal checking account at Boone. For each business entity operated by petitioner, a separate account was opened at Boone. Respondent determined additional income and disallowed certain Schedule C deductions and itemized deductions claimed by petitioners. Respondent's determination is presumed correct, and petitioners bear the burden of proving otherwise. [6] Rule *570 142(a); Welch v. Helvering, 290 U.S. 111 (1933). Discussion
Issue 1: Unreported Income
Respondent reconstructed petitioners' taxable income and deductions from a variety of sources -- canceled checks, deposit slips, bank statements, and credit memos reflecting deposits made into petitioners' personal accounts; canceled checks drawn by entities controlled *571 by petitioner and deposited in petitioners' accounts, and a check spreadsheet prepared by petitioner detailing business and personal expenditures. On December 30, 1978, petitioner opened a checking account at Boone in the name of Frozen Creek Associates. [7] As of December 31, 1978, this account had a balance of $ 92,000. Petitioner received two checks dated December 30, 1978, from Frozen Creek Associates totaling $ 30,000. These checks did not clear the account of Frozen Creek Associates until January 3, 1979, and January 5, 1979, respectively. The parties agree that this $ 30,000 constitutes gross income. Petitioners claim, however, that because they did not receive the checks until 1979, they do not constitute income until that year. Respondent determined that petitioners constructively *572 received the $ 30,000 in 1978. We agree with respondent. The general rule is that income is includable in gross income in the taxable year in which it is received, unless includable in a different year in accordance with the taxpayer's method of accounting. Sec. 451(a); sec. 1.451-1(a), Income Tax Regs.Section 1.451-2(a), Income Tax Regs., provides: (a) General rule. Income although not actually reduced to a taxpayer's possession is constructively received by him in the taxable year during which it is credited to his account, set apart for him, or otherwise made available so that he may draw upon it at any time, or so that he could have drawn upon it during the taxable year if notice of intention to withdraw had been given. However, income is not constructively received if the taxpayer's control of its receipt is subject to substantial limitations or restrictions. * * *
We have long held that the doctrine of constructive receipt is to be applied sparingly. Thus, amounts owed to a cash basis taxpayer but unpaid are not to be included in the taxpayer's income unless it appears that the money was available to him, the entity was able and ready to pay him, his right to *573 receive the money was not restricted, and his failure to receive the cash resulted from the exercise of his own choice. Basila v. Commissioner, 36 T.C. 111, 115-116 (1961) (citing Gullett v. Commissioner, 31 B.T.A. 1067, 1069 (1935)); Haack v. Commissioner, T.C. Memo. 1981-13. Frozen Creek Associates had sufficient funds in its account as of December 31, 1978, to cover the $ 30,000 payment to petitioner. Petitioner was the managing partner of Frozen Creek Associates and could sign the checks without an additional countersignature. Furthermore, petitioner testified that he felt he was entitled to the payments in 1978, and there were no substantial restrictions on petitioners' right to receive the $ 30,000. Therefore, we sustain respondent's determination that petitioners were in constructive receipt of $ 30,000 in 1978. During 1978 and 1979, petitioner promoted the Bank Creek Coal Venture, which was operated by Stephen Weidner. In 1978, petitioner received payments totaling $ 40,266.45 from Mr. Weidner. Respondent determined that the entire amount was taxable income to petitioner in *574 1978. Petitioner concedes that $ 24,010 was taxable income in 1978. Petitioner contends, however, that the remainder constituted a reimbursement of travel expenses incurred in connection with a coal symposium. Beyond petitioner's self-serving testimony, petitioners offered no evidence to establish that these payments constituted a reimbursement of travel expenses. We hold that petitioners have failed to prove respondent's determination erroneous and sustain respondent's determination that petitioners received $ 40,266.45 of taxable income in 1978. See Fleischer v. Commissioner, 403 F.2d 403, 406 (2d Cir. 1968), affg. T.C. Memo. 1967-85; Tokarski v. Commissioner, 87 T.C. 74, 77 (1986). In 1978, petitioner was retained by Martin Goldman to find investors for a partnership venture known as Docsa Manor. Petitioner received payments totaling $ 16,000 from Mr. Goldman in 1978. Respondent determined that the entire amount was taxable income to petitioner in 1978. Petitioner concedes that $ 6,000 was taxable income in 1978 but contends that the remainder constituted a loan that was to be settled *575 at the time the balance of his commissions was paid. Petitioner testified that the deal never closed, and the investments were returned 1-1/2 years later. The question of whether a debtor-creditor relationship is created at the time an advance is received is a question of fact to be determined upon a consideration of all the evidence. An essential element of such a relationship is the intent of the recipient to repay the advance and the intent of the person advancing the funds to enforce such repayment. Beaver v. Commissioner, 55 T.C. 85, 91 (1970). Advances of commissions to a taxpayer made under an agreement that places no personal liability for repayment on him constitute income to the taxpayer when received. Moorman v. Commissioner, 26 T.C. 666, 674 (1956); George Blood Enters., Inc. v. Commissioner, T.C. Memo. 1976-102. Here, Mr. Goldman treated the $ 10,000 payment as a referral fee in his account books, and he deducted it as such in 1978. Furthermore, he did not expect any repayment of the advance in the event that petitioner's earned commissions were less than the advance. *576 Moreover, when the deal fell through, repayment of the advance was not sought or offered. In view of the foregoing, we conclude that petitioner failed to show that he had an unconditional obligation to repay the advance and, therefore, sustain respondent's determination that such advance constituted income in 1978 when received by petitioner. On May 5, 1978, petitioner received a cashier's check from William R. Kemp in the amount of $ 1,500. This check, less $ 100 taken as cash, was deposited in petitioner's personal checking account. On or about July 27, 1978, petitioner received $ 10,000 from Dan H. Slone, which he deposited in his personal bank account -- less cash of $ 150. Respondent determined that both of these payments constituted taxable income to petitioner in 1978. Petitioners claim, however, that in both instances petitioner was merely cashing the checks for third persons, and therefore, the checks do not constitute taxable income. Other than petitioner's testimony, there is no evidence that petitioner was merely cashing these checks for third parties. In fact, contrary to petitioner's claim, he deposited each check into his personal account and drew only a fraction *577 in cash. Therefore, we sustain respondent's determination that petitioners received $ 11,500 of taxable income in 1978. On September 16, 1978, petitioner opened an account entitled the Jim Williams Client Escrow Account at Boone. That same day, petitioner wrote a check on the client escrow account payable to "cash" in the amount of $ 15,000 and deposited the proceeds into his personal checking account. Respondent determined that the $ 15,000 constituted taxable income to petitioners in 1978. Petitioners argue that this is not taxable income, as it was used to acquire a cashier's check that was used as a down payment for an airplane to be used in a business deal. Petitioners offered no evidence, other than petitioner's testimony, to establish that this amount was used to acquire an airplane. Therefore, we hold that petitioners have failed to prove respondent's determination erroneous and sustain respondent's determination that petitioners received $ 15,000 of taxable income in 1978. On September 29, 1978, petitioner once again wrote a check payable to "cash" on the client escrow account in the amount of $ 8,000. The proceeds of this check were used to repay an $ 8,000 loan *578 taken from Boone on petitioner's personal line of credit. Respondent determined that this $ 8,000 constituted taxable income to petitioners in 1978. Petitioners claim that the proceeds from this check were used to pay a third party and should not be taxable income to them. The fact that the $ 8,000 check was used to repay a personal loan by petitioner was stipulated by the parties. "The Court will not permit a party to a stipulation to qualify, change, or contradict a stipulation in whole or in part, except that it may do so where justice requires." Rule 91(e). Petitioners have not provided sufficient reasons why this stipulation should be set aside. Therefore, we hold that petitioners are bound by the stipulation and uphold respondent's determination that the $ 8,000 constitutes taxable income to petitioners in 1978. In the taxable years 1979, 1981, and 1982, petitioner received various checks drawn on the accounts of his controlled entities. In each instance, respondent determined the amounts to be taxable income to petitioner. Petitioner contends, however, that each of these checks represented either loans or loan repayments from his controlled entities. It is well settled *579 that where funds of a corporation are disbursed for the personal use or economic benefit of a shareholder or his immediate family, with no intention of repayment, the amount disbursed is taxable to the recipient shareholder. Noble v. Commissioner, 368 F.2d 439, 443 (9th Cir. 1966), affg. T.C. Memo. 1965-84; Silverman v. Commissioner, 28 T.C. 1061, 1064 (1957), affd. 253 F.2d 849 (8th Cir. 1958). Thus, whether withdrawals by a shareholder from a corporation are treated for tax purposes as loans or dividends depends upon whether, at the time of the withdrawals, the taxpayer intended to repay them. Busch v. Commissioner, 728 F.2d 945, 948 (7th Cir. 1984), affg. T.C. Memo. 1983-98; Berthold v. Commissioner, 404 F.2d 119, 122 (6th Cir. 1968), affg. T.C. Memo. 1967-102; Chism's Estate v. Commissioner, 322 F.2d 956, 960 (9th Cir. 1963), affg. T.C. Memo. 1962-6. Although the taxpayer's testimony that *580 he intended to repay and the label accorded the transaction by the parties are factors to consider, they are not determinative, and the Court must look to the objective criteria surrounding the transaction. This is especially true where the corporation is closely held. Busch v. Commissioner, supra at 948; Alterman Foods, Inc. v. United States, 505 F.2d 873, 877 (5th Cir. 1974); Berthold v. Commissioner, supra at 121; Fin Hay Realty Co. v. United States, 398 F.2d 694, 697 (3d Cir. 1968). First, in support of petitioner's contention that a check for $ 35,500 drawn on the bank account of Economic Energy Enterprises, Inc., constituted a loan from the entity to petitioner in 1979, petitioner introduced the check. The word "loan" appears on the memo line of the $ 35,500 check. Next, petitioner introduced check stubs from the checkbook of Economic Energy Enterprises, Inc., to support his claim that the $ 12,844 he received from Economic Energy Enterprises, Inc., in 1981 represented repayment of various small loans made by petitioner to Economic Energy Enterprises, *581 Inc. These check stubs contained notations indicating that certain deposits made to the entity's account were loans from petitioner. Finally, petitioner presented deposit slips to Triple M Leasing's account to support his contention that payments from that entity to Fox Pools in 1982 constituted repayment of various loans made by petitioner. Petitioner had a pool installed at his personal residence for which the checks represented payment. These deposit slips contained notations indicating that the deposits made to the entity's account were loans from petitioner. In short, the only evidence in support of petitioner's contentions that these amounts constituted loan proceeds or repayments are a few notations that appeared on checks, check stubs, and deposit slips that these amounts constituted loans. The conventional indicia of debt are notably lacking. There were no notes or certificates of indebtedness; there was no repayment schedule and no fixed date of maturity; no interest was charged; and no collateral was provided. Furthermore, the corporations made no effort to obtain payment of interest, nor was there any effort to obtain systematic and regular repayment of principal. *582 See Busch v. Commissioner, supra at 949; Alterman Foods, Inc. v. United States, supra at 878; Berthold v. Commissioner, supra at 122; Nix v. Commissioner, T.C. Memo. 1982-330; Howarth v. Commissioner, T.C. Memo. 1981-393. We find that petitioner has failed to establish that there was a definite intention on the part of either party that petitioner repay these advances; therefore, we uphold respondent's determination that these payments constituted taxable income to petitioner. On December 29, 1979, a check was drawn on Economic Energy Enterprises, Inc., payable to Boone in the amount of $ 15,166.44. This check was used to repay a $ 15,000 loan from the bank under petitioner's personal line of credit. Respondent determined this amount to be taxable income to petitioner in 1979. Of the original $ 15,000 loan, $ 5,000 was deposited into the personal account of petitioner Vicki L. Williams, and the remaining $ 10,000 was used to acquire a cashier's check payable to Linda L. Lockard. Petitioner argues that because *583 $ 10,000 of the loan proceeds from the bank was paid to Ms. Lockard for a business venture, a similar amount of the repayment of the loan by petitioner's wholly owned corporation should not be considered income to him. We disagree. Regardless of where the loan proceeds went, petitioner still personally benefited from the entity's paying off the entire amount of a loan for which he was personally liable. We find that the entire repayment constituted taxable income to petitioner in 1979. Issue 2: Additional Deductions
Petitioner argues that he is entitled to additional business expense deductions for commissions based on payments made to his brother, Lee Lon Williams. Lee Lon Williams owns and operates an entity known as LLW and Associates. In the taxable years 1978, 1979, and 1980, petitioner made payments to his brother in the amounts of $ 10,540, $ 45,030, and $ 22,100, respectively. During those same years, petitioner received payments from his brother or LLW and Associates in the respective amounts of $ 13,840, $ 7,500, and $ 15,000. Petitioner and his brother often loaned money back and forth over the years, but they never executed a loan agreement for such amounts. *584 Lee Lon Williams also received substantial commissions from Economic Energy Enterprises, Inc., during the taxable years 1979 and 1980. Deductions are strictly a matter of legislative grace, and petitioner bears the burden of proving that he is entitled to any deduction claimed. Rule 142(a); New Colonial Ice Co. v. Helvering, 292 U.S. 435, 440 (1934). Taxpayers are required to maintain records that are sufficient to substantiate claimed deductions. Sec. 6001. Petitioner provided no documentary evidence to substantiate his claim that the above payments to his brother constituted deductible commission expenses. To the contrary, the evidence indicates that petitioner and his brother were simply lending money back and forth and that petitioner's wholly owned corporation was the one paying commissions to petitioner's brother. We hold, therefore, that petitioner has not met his burden of proving he is entitled to the deductions claimed. Petitioner testified that he returned money to clients who were unhappy with the project in which they invested. He stated this was done once in 1978 when he returned $ 10,000 to Brent Emerick; and twice in 1980 when *585 he returned $ 5,082 to Neal Emerick and $ 10,000 to Don Cole. Petitioner argues that he is entitled to business expense deductions for these returned investments. Other than his testimony, petitioner presented only two checks payable to Neal Emerick totaling $ 5,082 as evidence that he is entitled to deduct the above amounts. We find that such evidence is insufficient to support petitioner's claimed deductions. Petitioner also claims that he is entitled to business bad debt deductions. Petitioner claimed that he was entitled to a bad debt deduction in 1978 in the amount of $ 6,875 in connection with a transaction with Wendell Nance. No evidence was presented to support this deduction; therefore, we find that petitioner is not entitled to this deduction. Petitioner also claimed he was entitled to two bad debt deductions in 1979 -- one in connection with $ 16,000 he loaned to Mr. Nance and one in connection with a $ 10,000 promissory note signed by Ms. Lockard. A taxpayer is entitled to report as an ordinary loss any business bad debt to the extent of its worthlessness during the taxable year. Sec. 166(a). Petitioner has the burden to establish: (1) The existence of a bona *586 fide debt; (2) the amount of the debt; (3) that the debt was incurred in or was created or acquired in connection with the taxpayer's trade or business; and (4) that the debt became worthless at least in part during the taxable year. Sec. 166(a), (d)(2); Rule 142(a); secs. 1.166-1(a), (c), 1.166-5(b), Income Tax Regs.
A bona fide debt is a debt that arises from a debtor-creditor relationship based upon a valid and enforceable obligation to pay a fixed or determinable sum of money. Sec. 1.166-1(c), Income Tax Regs. There is no standard test or formula for determining worthlessness; the determination depends upon the particular facts and circumstances of the case. However, it is generally accepted that the year of worthlessness is to be fixed by identifiable events that form the basis for reasonable grounds for abandoning any hope of recovery. Crown v. Commissioner, 77 T.C. 582, 598 (1981); Dallmeyer v. Commissioner, 14 T.C. 1282, 1291 (1950). With regard to the first debt, the $ 16,000 allegedly loaned to Mr. Nance, we find that petitioner has not met his burden of proving that a bona fide debt existed. The only *587 evidence in support of petitioner's contention is petitioner's self-serving testimony. No note was executed, no due date or interest rate was established, and no security was offered or taken. As to the second debt, on October 30, 1979, petitioner took out a loan from Boone under his personal line of credit in the amount of $ 15,000. Of that amount, $ 5,000 was deposited into the personal account of petitioner Vicki L. Williams; the remaining $ 10,000 was used to acquire a cashier's check payable to Ms. Lockard. The $ 10,000 payment was for the right to conduct tests on a device that would allegedly increase gas mileage in cars. If petitioner did not get the kind of results from his tests that Ms. Lockard promised, then she agreed to repay the $ 10,000. To carry out this agreement, Ms. Lockard executed a promissory note in the amount of $ 10,000. Petitioner deducted the amount of the note in 1979 as a bad debt. We find that petitioner has not met his burden of proving the worthlessness of this $ 10,000 note. There was no evidence indicating that Ms. Lockard was incapable of paying, such as her insolvency or lack of assets. Furthermore, the failure to undertake any collection *588 efforts reflects unfavorably on petitioner's allegation of worthlessness. Olivares v. Commissioner, T.C. Memo. 1983-649. Therefore, we deny all of petitioner's claimed bad debt deductions. Petitioner has also claimed that he is entitled to business expense deductions for certain legal fees. To be entitled to a business expense deduction for legal fees under section 162, the taxpayer must prove that the fees were: (1) Ordinary and necessary, (2) paid or incurred in carrying on a trade or business, (3) incurred during the taxable year in which the taxpayer seeks to deduct them, and (4) paid by the person to whom the services were rendered. Sec. 162(a). Furthermore, the taxpayer must show that the claimed deduction is not disallowed under other provisions of the Code. Sec. 161. This means that petitioner must be able to show, inter alia, that the legal fees were not incurred for personal reasons, sec. 262, and that the fees were not expended to increase the value of any property and, thus, were not capital expenditures, sec. 263(a). First, in 1979, petitioner drew a check on his personal account payable to the Mendelson & Popow Client Escrow Account *589 in the amount of $ 40,000 to pay legal fees. The only evidence supporting petitioner's contention is his self-serving testimony that the legal fees were paid for the preparation of memoranda and circulars for various projects. Second, in 1982, petitioner claimed a deduction for $ 19,490 in legal fees, which respondent disallowed. The only evidence presented by petitioner to support the claimed deduction was a copy of a cashier's check made payable to George Adinamis in the amount of $ 19,000. Petitioner testified that Mr. Adinamis was a local attorney who was hired to defend the investors in petitioner's various business entities who were being disallowed certain tax deductions related to their investments. Third, in 1984, petitioner claimed a deduction for legal fees in the amount of $ 6,000, which respondent again disallowed. The only evidence supporting this is petitioner's testimony that the expenditure related to his business. We find that petitioner has failed to meet his burden of proving that he was entitled to deduct the legal fees under section 162. Petitioner provided no documentary evidence to substantiate the nature of the legal services. Thus, we are unable *590 to determine whether the expenses were ordinary and necessary as opposed to capital expenditures. Furthermore, with regard to the fees advanced to Mr. Adinamis, petitioner has not sufficiently shown that the services were rendered to him and not one of his controlled entities. Petitioner testified that Mr. Adinamis was hired to defend the investors in petitioner's various business entities who were being disallowed certain tax deductions related to their investments. Payment of a related entity's expenses does not give rise to a deduction for petitioner. Hewett v. Commissioner, 47 T.C. 483, 488 (1967). Issue 3: Addition to Tax for Fraud
Respondent has determined that petitioner [8] is liable for additions to tax under section 6653(b) for fraudulently understating his income in 1978, 1979, and 1980. Section 6653(b) provides that if any part of the underpayment is due to fraud, there shall be added to the tax an amount equal to 50 percent of the underpayment. In order to establish petitioner's liability for fraud, respondent bears the burden of proving by clear and convincing evidence that: (1) An underpayment of tax exists for each of the *591 years in issue, and (2) that some portion of each underpayment is due to fraud. Sec. 7454(a); Rule 142(b); Petzoldt v. Commissioner, 92 T.C. 661, 699 (1989); Rowlee v. Commissioner, 80 T.C. 1111, 1123 (1983). First, respondent must prove that an underpayment exists for the periods in issue. Respondent cannot rely on the taxpayer's failure to prove error in respondent's determination to meet her burden of proof. Habersham-Bey v. Commissioner, 78 T.C. 304, 312 (1982); Otsuki v. Commissioner, 53 T.C. 96, 106 (1969). The parties have stipulated, and petitioner has conceded at trial, substantial amounts of unreported income in each of the years in issue. Beyond that, respondent has established additional unreported gross income received by petitioner in the years at issue. In order to reconstruct petitioners' income, respondent analyzed deposits to petitioners' personal *592 checking accounts as well as deposits, withdrawals, and checks drawn on the accounts of petitioner's business entities. Section 6001 requires that taxpayers maintain records sufficient to determine their correct tax liabilities. DiLeo v. Commissioner, 96 T.C. 858, 867 (1991), affd. 959 F.2d 16 (2d Cir. 1992); Estate of Mason v. Commissioner, 64 T.C. 651, 656 (1975), affd. 566 F.2d 2 (6th Cir. 1977). In the absence of such records, respondent is authorized to use any reasonable means to reconstruct petitioners' taxable income. Sec. 446(b); Petzoldt v. Commissioner, supra at 686-687. We find that the means respondent used to reconstruct petitioners' income in the present case was reasonable, and respondent presented sufficient documentary evidence of additional unreported income to meet her burden of proving that an underpayment exists for the years in issue. Once the Commissioner has established receipts in excess of those reported on a taxpayer's return, the taxpayer bears the burden of coming forward with evidence of costs, expenses, *593 and other factors that would lessen such tax liability. United States v. Bender, 218 F.2d 869, 871-872 (7th Cir. 1955). Petitioners have submitted canceled checks in an attempt to prove their entitlement to additional deductions. However, as previously discussed, petitioners have failed to meet their burden of proving additional deductions. Next, respondent must prove that some portion of the underpayment for each year is due to fraud. Respondent must show that petitioner intended to evade taxes known to be owing by conduct intended to conceal, mislead, or otherwise prevent the collection of taxes. Stoltzfus v. United States, 398 F.2d 1002, 1004 (3d Cir. 1968); Webb v. Commissioner, 394 F.2d 366, 377-378 (5th Cir. 1968), affg. T.C. Memo. 1966-81; Rowlee v. Commissioner, supra at 1123. Respondent argues that petitioner, by reason of his conviction for tax evasion under section 7201 for the taxable year 1979, is collaterally estopped from denying the specific intent requirement of section 6653(b) for that year. A criminal *594 conviction for tax evasion is a conclusive prior judicial determination of the ultimate fact that the underpayments of tax were "due to fraud" within the meaning of section 6653(b). Plunkett v. Commissioner, 465 F.2d 299, 305 (7th Cir. 1972), affg. T.C. Memo. 1970-274; Moore v. United States, 360 F.2d 353, 355-356 (4th Cir. 1965); Amos v. Commissioner, 43 T.C. 50, 55 (1964), affd. 360 F.2d 358 (4th Cir. 1965). It is not material that petitioner's conviction was based on a guilty plea, because for purposes of applying the doctrine of collateral estoppel, it makes no difference whether the conviction results from a guilty plea or a trial on the merits. Gray v. Commissioner, 708 F.2d 243, 246 (6th Cir. 1983), affg. T.C. Memo. 1981-1; Plunkett v. Commissioner, supra at 305; Stone v. Commissioner, 56 T.C. 213, 221 (1971); Arctic Ice Cream Co. v. Commissioner, 43 T.C. 68, 75 (1964). Because *595 respondent has proven petitioner's conviction under section 7201, we hold that petitioner is collaterally estopped from denying that part of the underpayment for the taxable year 1979 was due to fraud. Now we must determine whether respondent has met her burden of proving that some portion of the underpayment for the years 1978 and 1980 was due to fraud. The existence of fraud is a factual question to be determined from the entire record. Gajewski v. Commissioner, 67 T.C. 181, 199 (1976), affd. without published opinion 578 F.2d 1383 (8th Cir. 1978). Fraud is not to be imputed or presumed, but rather must be established by some independent evidence of fraudulent intent. Beaver v. Commissioner, 55 T.C. 85, 92 (1970); Otsuki v. Commissioner, supra at 106. However, fraud may be proved by circumstantial evidence and reasonable inferences drawn from the facts, because direct proof of the taxpayer's intent is rarely available. Spies v. United States, 317 U.S. 492 (1943); Rowlee v. Commissioner, supra at 1123. *596 Courts have relied on a number of "badges of fraud" in deciding section 6653(b) cases: (1) Understatement of income, (2) maintenance of inadequate records, (3) failure to file tax returns, (4) implausible or inconsistent explanations of behavior, (5) concealment of assets, and (6) failure to cooperate with tax authorities. Bradford v. Commissioner, 796 F.2d 303, 307 (9th Cir. 1986), affg. T.C. Memo. 1984-601. Upon examination of the entire record, we conclude that some portion of petitioner's underpayments for 1978 and 1980 was due to fraud. A number of the Bradford badges of fraud are present here. First, respondent has shown that petitioner has substantially understated his income not only for 1978 through 1980 but for all the years in issue. Such consistent and substantial understatement of income is strong evidence of fraud. Merritt v. Commissioner, 301 F.2d 484, 487 (5th Cir. 1962), affg. T.C. Memo. 1959-172; Otsuki v. Commissioner, 53 T.C. 96, 107-108 (1969). Second, failure to file Federal income tax returns is persuasive *597 circumstantial evidence of fraud. Marsellus v. Commissioner, 544 F.2d 883, 885 (5th Cir. 1977), affg. T.C. Memo. 1975-368; Castillo v. Commissioner, 84 T.C. 405, 409 (1985); Grosshandler v. Commissioner, 75 T.C. 1, 19 (1980). As discussed below, petitioner failed to file timely Federal income tax returns for the taxable years 1979 through 1985. Third, petitioners have failed to maintain adequate records of their earnings. Respondent was forced to reconstruct their income using other means. Fourth, the practice of charging personal items to corporate business expense is evidence supporting the imposition of additions to tax for fraud. Benes v. Commissioner, 42 T.C. 358, 383 (1964), affd. 355 F.2d 929 (6th Cir. 1966). Fifth, petitioner failed to cooperate with the Internal Revenue Service during its investigation of petitioners' tax liability for the years 1978 through 1980. Respondent's agents were forced to issue numerous summonses to various financial institutions and third parties. This, too, is *598 evidence of fraud. Rowlee v. Commissioner, 80 T.C. at 1125; Grosshandler v. Commissioner, supra at 20. Finally, petitioner, in his Plea Agreement, conceded that section 6653(b) was applicable to any underpayment of personal income taxes determined for the taxable years 1978, 1979, and 1980. Such an admission is evidence that the underpayments in those years were due to fraud. Issue 4: Additions to Tax for Failure To File a Timely Return
Respondent determined that petitioner was liable for additions to tax under section 6651(a)(1) for the taxable years 1982 through 1987. Section 6651(a)(1) imposes an addition to tax upon a taxpayer who fails to file a timely return, unless the taxpayer can show: (1) That the failure did not result from "willful neglect", and (2) that the failure was "due to reasonable cause". Willful neglect has been defined as a conscious, intentional failure or reckless indifference. United States v. Boyle, 469 U.S. 241, 245 (1985). Reasonable cause has been defined as the exercise of ordinary business care and prudence where the taxpayer is still, nevertheless, *599 unable to file the return within the prescribed time. Sec. 301.6651-1(c)(1), Proced. & Admin. Regs. For the taxable years 1986 and 1987, petitioner did not file any income tax returns until March 27, 1989. Petitioner is clearly liable for additions to tax under section 6651(a)(1) for these years. For the taxable years 1979 through 1985, petitioner filed Forms 1040 in which each relevant line contained the word "object" except that on line 8 of his 1979 Form 1040, he reported wages of $ 8,587.01. On separate occasions, respondent sent letters to petitioner indicating that the Forms 1040 were not acceptable "because [they did] not contain information required by law, and [they did] not comply with the Internal Revenue Code requirements." Petitioner filed amended returns for these years on March 27, 1989. It is well settled that a Form 1040 (or Form 1040A) that fails to disclose sufficient information from which respondent can compute and assess the tax liability of a particular taxpayer does not constitute "a return". Thompson v. Commissioner, 78 T.C. 558, 561-562 (1982); Reiff v. Commissioner, 77 T.C. 1169, 1177 (1981); *600 Hatfield v. Commissioner, 68 T.C. 895, 898 (1977). We hold that petitioner's original filings did not constitute returns. Therefore, petitioner will be liable for the section 6651(a)(1) additions to tax unless he can show reasonable cause and lack of willful neglect. Petitioner testified that beginning in 1979, he was being investigated by the Securities Exchange Commission on securities violations and that his attorney advised him to exercise his Fifth Amendment right. A good faith belief that the filing of an income tax return would violate a taxpayer's constitutional rights does not, in and of itself, constitute reasonable cause for failure to file. See Reiff v. Commissioner, supra at 1180. At trial, petitioner made references to securities charges. Petitioner, however, has failed to establish any relationship between the criminal charges and the information requested on the Form 1040, and he has failed to show that any real danger of criminal prosecution existed at the times he was required to file returns for each of the years in issue. Reasonable reliance on the advice of an attorney may also constitute *601 reasonable cause for failure to file a return. United States v. Boyle, supra at 250. However, petitioner's self-serving, uncorroborated testimony is insufficient to establish such reasonable reliance. See Lust v. Commissioner, T.C. Memo. 1975-16. Therefore, we find that petitioner has failed to show reasonable cause and uphold respondent's determination of additions to tax under section 6651(a)(1) for the years 1979 through 1985. Issue 5: Additions to Tax for Negligence
Respondent also determined additions to tax under section 6653(a)(1) and (2) for the taxable years 1982 through 1985, and under section 6653(a)(1)(A) and (B) for the taxable years 1986 and 1987. [9] These sections impose an addition to tax equal to 5 percent of the underpayment if any part of any underpayment is due to negligence or disregard of rules or regulations, plus an amount equal to 50 percent of the interest payable with respect to the portion of such underpayment attributable to negligence. *602 Respondent's determination that a taxpayer was negligent is presumptively correct, and the burden is on the taxpayer to show lack of negligence. Hall v. Commissioner, 729 F.2d 632, 635 (9th Cir. 1984), affg. T.C. Memo. 1982-337; Marcello v. Commissioner, 380 F.2d 499, 506-507 (5th Cir. 1967), affg. in part and remanding in part 43 T.C. 168 (1964); Bixby v. Commissioner, 58 T.C. 757, 791 (1972). Negligence is defined as the lack of due care or the failure to do what a reasonable and ordinarily prudent person would do under the circumstances. McGee v. Commissioner, 979 F.2d 66, 71 (5th Cir. 1992), affg. T.C. Memo. 1991-510; Marcello v. Commissioner, supra at 506; Neely v. Commissioner, 85 T.C. 934, 947 (1985). Petitioner argues that he was not negligent, because he relied on a certified public accountant. Reliance upon the advice of experts may constitute a defense to the addition to tax for negligence. Jackson v. Commissioner, 86 T.C. 492, 539 (1986), *603 affd. 864 F.2d 1521 (10th Cir. 1989); Industrial Valley Bank & Trust Co. v. Commissioner, 66 T.C. 272, 283 (1976). This is true even where the advice relied upon was erroneous. Brown v. Commissioner, 47 T.C. 399, 410 (1967), affd. 398 F.2d 832 (6th Cir. 1968). However, reliance on professional advice, standing alone, is not an absolute defense to negligence; such reliance must be shown to be reasonable. Freytag v. Commissioner, 89 T.C. 849, 888 (1987), affd. 904 F.2d 1011 (5th Cir. 1990), affd. 501 U.S. 868 (1991). Petitioner bears the burden of proving that he at least supplied the professional with the necessary information and that the incorrect return resulted from the preparer's mistakes. Pessin v. Commissioner, 59 T.C. 473, 489 (1972). We are not convinced that petitioner supplied the necessary information to his accountant. Therefore, petitioner has not met his burden of showing lack of negligence through reasonable reliance on an expert. *604 In fact, additional factors point to petitioner's negligence. Petitioner failed without reasonable justification to timely file his tax return and failed to keep adequate records. See Emmons v. Commissioner, 92 T.C. 342, 349 (1989), affd. 898 F.2d 50 (5th Cir. 1990); Nelson v. Commissioner, T.C. Memo. 1993-419. Accordingly, we sustain respondent's determination. Decisions will be entered under Rule 155. Footnotes
1. 50 percent of the interest due on the deficiency.↩
1. References to petitioner in the singular refer only to petitioner James R. Williams, Jr.↩
2. Unless otherwise indicated, all section references are to the Internal Revenue Code in effect for the taxable years in issue, and all Rule references are to the Tax Court Rules of Practice and Procedure.↩
3. Respondent concedes the addition to tax for fraud for 1981, and that petitioner Vicki L. Williams is not liable for the addition to tax for fraud for 1978.↩
4. A copy of petitioner's 1980 Federal income tax return is not contained in the record.↩
5. The record does not contain a similar letter with respect to petitioner's taxable year 1985.↩
6. With respect to several items in the notices of deficiency, petitioners failed to offer any evidence at trial. Moreover, petitioners did not adequately address these items on brief. Accordingly, we find petitioners have abandoned these items. See, e.g., Bradley v. Commissioner, 100 T.C. 367, 370 (1993); Leahy v. Commissioner, 87 T.C. 56, 73-74↩ (1986). Therefore, as to these items, we sustain respondent's determinations, and we will restrict our opinion to discussing those adjustments contained in the notices of deficiency that petitioners actively contested.
7. The signature card for this checking account authorized recognition of either↩ petitioner's signature or Eugene G. Popow's signature. The signature card was reexecuted in 1979 to authorize only the signature of petitioner.
8. See supra↩ note 3.
9. Sec. 6653 was amended by sec. 1503(a) of the Tax Reform Act of 1986, Pub. L. 99-514, 100 Stat. 2085, 2742, effective for returns the due date for which is after Dec. 31, 1986. As amended, the 5-percent addition to tax for negligence or disregard of rules or regulations and the 50-percent interest provision formerly contained in sec. 6653(a)(1) and (2) are contained in sec. 6653(a)(1)(A) and (B), respectively.↩